SOCIETY OF MOUNT CARMEL *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* JOHN J. FOX, JR., d/b/a Fox & Fox, Defendant-Appellant and Cross-Appellee.

Second District   No. 79-657

Opinion filed November 26, 1980.

Steven P. Handler, David R. Melton, and Thomas B. Chandler, all of Karon, Morrison & Savikas, of Chicago, for appellant.

Julius Abler, of Libertyville, and Fred Lane, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs, the Society of Mount Carmel, an Illinois corporation, and Sisters of Charity of the Blessed Virgin Mary of Dubuque, Iowa, an Iowa corporation (Mount Carmel), filed a complaint for damages in 1970, alleging the negligence of defendant, John J. Fox, Jr., an architect, in designing Carmel High School in Mundelein in 1962. In *Society of Mount Carmel v. Fox* (1975), 31 Ill. App. 3d 1060, we reversed a summary judgment for the defendant which had been granted on statute of limitations grounds. Upon remand and after a lengthy bench trial, the trial judge entered judgment for Mt. Carmel in the amount of $687,879, from which defendant appeals.[1]

The defendant contends that the limitations period began to run from the time the defects were discovered in the building in 1963 and not from the time plaintiffs discovered the alleged cause of the defects in 1969, and that the suit is therefore barred by the applicable statute of limitations. (Ill. Rev. Stat. 1969, ch. 83, par. 16.) Alternatively he contends that the finding that the building was negligently designed was against the manifest weight of the evidence; that the plaintiffs were guilty of contributory negligence barring recovery; that various trial errors prejudiced defendant to the extent of depriving him of a fair trial; and that the damage award is not supported by the evidence.

■■ Preliminarily, we conclude that Mount Carmel's suit was not barred by the statute of limitations. Defendant notes that the evidence shows that plaintiffs knew of the cracks and defects in the building more than five years prior to the filing of the complaint. Essentially defendant argues that the statute began to run at the time the plaintiffs knew of cracks and defects in the building, not when they "learned of the alleged cause of the defects," presumably in 1969 when they received a report from the Lake County Contractors Association. (This report concluded

---

[1] Plaintiffs filed a notice of cross-appeal as to the amount of damages awarded but have not argued that cross-appeal in their brief, and it has therefore been waived.

that the failure to include expansion joints was the design defect.) However, in our previous decision, we established the law of the case contrary to this position, stating:

"[T]he ends of justice would be best served by allowing plaintiff to sue within the statutory period computed from the time it knew or should have known of the existence of the alleged defective *design.*" (Emphasis added.) 31 Ill. App. 3d 1060, 1063.

No evidence was presented that Mount Carmel knew or should have known of the defective design prior to receiving the Lake County Contractors Association report in 1969. Defendant himself told the plaintiffs that the defects were "maintenance problems"; and there is evidence in the record that the plaintiffs treated them as such until the receipt of the report in 1969.

It is true that on the first day of trial the court improperly placed the burden of proof as to the statute of limitations issue on the defendant. The plaintiff has the burden of pleading and proving the date of discovery when seeking to come within the "discovery rule" exception to the statute of limitations. (See *Auster v. Keck* (1976), 63 Ill. 2d 485, 487-88. See also *Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 936.) However, the error did not affect the result since the record clearly supports the conclusion that plaintiffs met their burden. Although the issue was thoroughly explored on both sides of the case, the testimony of the plaintiffs that they neither knew nor had any way of reasonably knowing the fact that the defects were allegedly the result of defective design until they received the contractors' report was not controverted. The record shows that while plaintiffs knew of various defects, including plaster and masonry cracks and bulging of walls, the defendant had assured the plaintiffs that these were merely maintenance problems. There is no evidence in the record which would show that plaintiffs knew of the alleged defective design of the building as the cause of the defects prior to 1969.

■■ Reaching the merits of the case, we conclude that the trial court's finding of negligent design was not against the manifest weight of the evidence.

The building was completed in 1963. The defendant, called by the plaintiffs under section 60, corroborated receipt of complaints within the first year that the building was completed. Some of these early complaints concerned leaks, particularly around the skylight. Father Jordan testified that he arrived as treasurer and business manager of Carmel in 1966 and was there until 1973. When he arrived in 1966 he said he noticed cracks and openings in the exterior and interior walls, leaks around the skylights and breaks in various places in the building. He said that defendant came out to look at the building at his request and stated that the defects were

"maintenance problems." Thereafter he hired people to repair the building "as best we could." He said that some of the school maintenance people did continuous plastering and patching of various areas and that after various talks with defendant in the period he asked the Lake County Contractors Association to inspect the building and make a report in 1969.

One of the contractors who had made the inspection and report for the contractors association testified that in his opinion the cracks and other defects in the building were caused by a lack of expansion joints to accommodate the expansion and contraction of the walls. He stated that he was not an architect or structural engineer but that he knew from experience the difference between an expansion or contraction crack and other kinds.

Eugene Korbel, a registered architect and structural engineer, John Sbarounis, a structural engineer, and John Nunemaker, an architectural engineer, all testified with reference to a study done by the architectural firm of Perkins & Will in 1976. Each testified in substance that the cracks and other defects in the building were caused by a lack of expansion joints to accommodate the expansion and contraction of the walls. Each also gave his opinion that the defendant did not exercise the skill ordinarily used by reasonably well qualified architects in the area in 1962. William Paxton, a roofing specialist for Celotex Corporation, a leading manufacturer of expansion joints and gypsum roofs, testified that he examined the roof of Carmel High School in 1971. He stated his opinion that the condition of the roof was caused by the shrinkage of the gypsum deck and the lack of structural expansion joints in the roof. He stated that the standards in 1961 and 1962 required that structural expansion joints in gypsum roofs should be installed in any structure that exceeded 200 feet in length as this one did. On cross-examination he admitted, however, that some of the problems in the roof may have been caused by poor construction or maintenance failures. On redirect he stated that he could not tell whether the defects were caused by poor construction or failure to provide for expansion in the roof.

Clayford Grimm, a consulting architectural engineer who was associated with the Structural Clay Products Institute from 1950 to 1960, testified. He said that based upon his experience in the field and his inspection of Carmel on March 5, 1979, he is of the opinion that the cause of the structural failure in Carmel is the expansion of brick masonry and that the failure should be corrected by placing expansion joints in some 65 locations in the building. He stated that the existing cracks could not be used as natural expansion joints because they cannot be adequately sealed.

Various architects and engineers also testified for the defendant. Edo Belli, a licensed architect and engineer, said he first toured Carmel High

School on July 2, 1969, and observed cracks in certain areas and one "bad spot" on the east wall of the cafeteria. The next time he saw the building was in 1978, and he noticed that the cracks had opened up more due to freezing. He said the cracks appeared to have been poorly sealed and looked like the work had been done by an amateur. He examined the Perkins & Will drawings and recommendations and concluded that the expansion joints proposed would have no benefit to the building. In his opinion architects in the Mundelein area in 1961 and 1962 following reasonable standards of practice would not have included expansion joints in the design of Carmel High School.

Michael Johns, a structural engineer, who has a master's degree in building engineering, testified that he examined Mount Carmel High School on three occasions between 1977 and 1979. He noticed various maintenance deficiencies in the structure. After examining the Perkins & Will report he concluded that the many building control joints and masonry expansion joints recommended in the report would serve no beneficial purpose. He also concluded that the roof had served most of its useful life. He said the cracking he observed in the building was not an uncommon type of malperformance in that type of building. He testified as to why he believed the building was not a monolithic structure which would need expansion joints; that due to the configuration of the building it behaves as an "accordion" and accommodates expansion and contraction in that manner, with "nothing but flexibility" in the structure so that it works "admirably well."

Clarence Monk, a structural engineer with a master's degree, manager of research for the Structural Clay Products Institute from 1954-1967, also testified for defendant. He inspected Carmel High School three times during 1977-1978. He ascertained that the cracks in the exterior of the building were primarly due to thermal expansion. He attributed most of the cracking to maintenance problems. He said that some cracking in the plaster was caused by a failure to allow for movement by use of verticle expansion joints; that such cracking should be remedied by installation of such joints and patching; and noted that the useful life of the roof is no more than 15 or 20 years. In his opinion the use of structural expansion joints would not have prevented the masonry cracking. He observed that there is inherent flexibility in the entire building which precluded the need for expansion joints as recommended by Perkins & Will. He also testified that only "cosmetic" repair is necessary for some masonry walls while others need to be rebuilt. He concluded that the design of Carmel High School was carried out in accordance with acceptable practices in 1961.

However, on cross-examination he admitted that expansion joints might have stopped cracking in some of the gymnasium walls and that a

structural crack in the chapel could have been prevented by their use. He also agreed that good architectural procedure in 1962 would have provided for thermal movements which had caused some of the splits in the roof. He also acknowledged that expansion joints should have been installed originally in the roof and that the defendant had not followed the design guideline in the Architectural Graphic Standards with respect to putting expansion joints into the area where the wings join the main structures.

The defendant, John Fox, testified that the roof structure is not monolithic due to the nature of gypsum and the fact that there are cracks every five feet in the roof to allow for expansion. He said he did not use expansion joints in Carmel because they leak and require regular maintenance. He believes that the building is flexible and does not require expansion joints. He said the failure to quickly repair cracks in the structure is the cause of their widening.

Basically the question of negligence comes down to a classic battle of the experts. Defendant contends that his experts had better qualifications to render an opinion as to whether he conformed to the existing standards in 1962 and that none of plaintiffs' experts were engaged in the design of masonry buildings in 1962. Consideration of the qualifications of expert witnesses rests largely within the discretion of the trial court. (*Evanston Best & Co. v. Goodman* (1938), 369 Ill. 207, 212; *Anderson v. General Grinding Wheel Corp.* (1979), 74 Ill. App. 3d 270, 281-82.) We are satisfied from the record that both sets of experts were reasonably qualified and able to provide an informed opinion as to the cause of the defects, the standard of care and the proper method of repair.

Of course, if there is no factual basis for an expert's opinion and it is impeached by physical exhibits, the opinion may be entitled to little weight. *Anderson v. General Grinding Wheel Corp.* (1979), 74 Ill. App. 3d 270, 281-82.

The key exhibits introduced in this case do not establish a conclusive standard in 1962 as to the use of expansion joints. The exhibits offered included a 1961 Bulletin of the United States Gypsum Company, the Plummer Book and Technical Notes of the Structural Clay Products Institute, the Time Saver Standards, the Architectural Graphic Standards and the American Standard. From our review of these publications, we conclude that they do not impeach plaintiffs' experts and also do not conclusively support their testimony. However, they tend to substantiate the view that expansion joints were necessary in long low buildings with many "L", "T" and "U" configurations. Defendant's expert, Monk, acknowledged that defendant did not follow some of the above guidelines, while the defendant flatly disagreed with many of them. The decision of the trial court on the negligence issue is not against the

manifest weight of the evidence. See *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 370; *Tulgetske v. R. D. Werner Co.* (1980), 86 Ill. App. 3d 1033, 1038.

Further, we conclude that the trial court did not err in failing to find the plaintiffs guilty of contributory negligence. At best, defendant's argument that plaintiffs' inadequate repair caused the damage goes to the question of proximate causation or failure to mitigate damages but not to the issue of contributory negligence. There is no question that defendant was in complete control of the design of the building and that plaintiffs' negligence, if any, occurred some time later. Whether the plaintiffs' acts or omissions aggravated the cracking and escalated the cost of repair is a question of fact on which there was conflicting evidence, and the resolution of this issue was within the fact-finding function of the trial judge.

Similarly, the question of the amount of the damages was a question of fact to be resolved by the trial judge. We conclude that, based on the evidence, the award was not against the manifest weight of the evidence.

Father Jordan testified as to various bills which were incurred for repairs of the building, including roof repairs, plastering and paint. Korbel testified that approximately 90 masonry expansion joints and eight structural expansion joints would have to be installed to prevent future cracking of the interior and exterior of the walls and that several other walls needed to be totally rebuilt. The nature of the repairs was corroborated by the witnesses Sbarounis and Grimm. Plaintiffs' witness Oscar Kiendl, a structural engineer, whose main activity has been in estimating the cost of construction of buildings, particularly schools, prepared an estimate of the cost of repairs based on the specifications of Perkins & Will, testified to by the other witnesses, reaching a final figure of $1,111,769. Based on defendant's theory of the case, his witnesses estimated the cost of repairs to be merely $25,000.

■■ The assessment of damages by a trial court sitting without a jury will not be set aside unless manifestly erroneous; and may be upheld if it falls within the range of estimates given by expert witnesses. (*Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 311, 313.) Absolute certainty as to the amount of damages is not required. (*De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 802.) Here, there was a striking conflict between the experts as to the necessary repairs. While the method by which the court calculated the damages is not a matter of record, the damages awarded are supported by the record and the judgment is not manifestly erroneous. The court may have reduced the damages sought by plaintiffs by finding that they failed to mitigate damages, particularly as to the roof, thereby deducting the estimated cost of roof repairs which approximated $138,000 according to plaintiffs' witnesses. Father Jordan,

for example, testified that after the roof was repaired in 1968 there were no more leaks until the time he left in 1973. Plaintiffs' witness Paxton admitted, on cross-examination, that some of the problems on the roof may have been caused by poor construction or maintenance failure. There was also testimony that the useful life of the roof had expired. The court may also have decided that fewer expansion joints than plaintiffs desired would be sufficient. There was a considerable range in the testimony of the experts on both sides which could support the conclusion that not all of the expansion joints recommended in the Perkins & Will report were necessary. Similarly, there was conflicting evidence as to whether plaintiffs' repair efforts were responsible for at least some of the damages. In any event, the damages awarded were within the range of evidence and were not manifestly erroneous.

We have also considered defendant's claim that trial errors require a new trial and do not agree. Defendant first argues that he was prejudiced by the court's ruling on his notice to produce evidence pursuant to Supreme Court Rule 237(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 237(b)). On the fourth day of trial defendant served plaintiffs with the notice to produce all minutes from 1962 to 1966 of the plaintiff corporation. The court granted plaintiffs' motion to quash the notice on grounds of relevancy and timeliness, also noting that the notice was too broad. He characterized the motion as an attempt to conduct discovery during the trial. Principally defendant argues that the minutes had a bearing on the statute of limitations issue and that they became particularly necessary in the course of trial when it appeared that the trial court was shifting the burden of proof to the defendant. Since there was no showing of relevancy we find no error in the exclusion.

■■ Defendant also argues that it was reversible error to refuse his written estimate of repair costs. The court sustained the objection to the admission of the written estimate of repair costs prepared by defendant's expert Herbert Wustman on hearsay grounds. However, we agree with the defendant that a repair estimate is not hearsay when, as here, the author can be cross-examined. (See *Harris v. City of Granite City* (1977), 52 Ill. App. 3d 782, 786.) However, this was also clearly harmless. Defendant acknowledges that Wustman testified in detail concerning the proposed repairs and costs so that the trial court was fully apprised of the position of Wustman and other defense witnesses as to the repairs needed in the building.

The judgment of the trial court is affirmed.

Affirmed.

WOODWARD and LINDBERG, JJ., concur.