EDWARD LANNAN POLLOCK *et al.*, Ex'rs of the Estate of Henry W. Pollock, Deceased, *et al.*, Plaintiffs-Appellants, v. J. E. HAFNER, Defendant-Appellee.

Fourth District No. 17447

Opinion filed August 9, 1982.

R. P. O'Connell, Ltd., of Quincy (Chet W. Vahle, of counsel), for appel-

lants.

Delmar R. Mitchell and Mark A. Drummond, both of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, for appellee.

JUSTICE LONDRIGAN delivered the opinion of the court:

The plaintiffs sued the defendant, who is both an architect and an engineer, for his allegedly negligent work in designing a building that has settled and cracked. The defendant moved for summary judgment on the grounds that he had not breached his duty of due care and that the complaint is barred by the applicable statute of limitations, five years. The trial court decided that a factual question existed on duty but granted the motion because of the statute of limitations. We agree that the complaint is untimely and affirm.

According to the plaintiffs' one-count complaint, filed June 22, 1978, the defendant and the plaintiffs' predecessor in interest signed a contract March 17, 1953, for the defendant "to perform preliminary work and prepare working drawings and specifications for a Motor Truck Branch Service Building." The complaint alleges that the defendant's negligence caused the building to subside in August 1976.

In requesting summary judgment the defendant argued that the cause of action accrued in 1957, when subsidence began and structural damage became visible; accompanying the motion were affidavits from five employees in the building who said that various defects, including cracked walls and sunken floors, were apparent as long ago as 1957 and 1962. The plaintiffs moved to dismiss the motion and submitted the affidavit of plaintiff John T. Ennis. According to Ennis, "for some period of time prior to September, 1976," he and Henry W. Pollock—who died in 1979 and whose executors were substituted as plaintiffs—noticed that walls had cracked and that portions of the floor had sunk, and they employed several experts to investigate. Tests done from September 30, 1976, until October 28, 1976, showed that the building was sitting on a pile of rubble consisting of brick and mortar. Tests done by another expert in November and December 1976 confirmed this and concluded that the building was settling because of its location atop rubble. Ennis' affidavit asserts that with that information the plaintiffs knew for the first time the cause of the problem. The defendant responded with another affidavit from one of the five employees. The affiant, who saw the excavation for the building, which was from September 1953 until March 1954, said that the excavation revealed rubble—cinders, ashes, brick, and mortar—under the building site. Plaintiff Ennis then filed another affidavit, saying

that the excavation revealed rubble, that the defendant changed some plans and designs as a result of that news, and that the contractor increased his price by $44,000 in response to the changes.

The trial court granted the defendant's motion for summary judgment because as a matter of law the plaintiffs should have known of the defects in the building more than five years before they finally filed suit. Applying the discovery rule, the court measured the plaintiffs' diligence against the undisputed information in the affidavits submitted by the defendant.

The parties agree that the applicable statute of limitations is the five-year period provided by section 15 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 16) for actions "to recover damages for an injury done to property, real or personal." Section 13—214 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—214), which was formerly section 21.3 of the Limitations Act (Ill. Rev. Stat., 1980 Supp., ch. 83, par. 22.3), provides a shorter period for bringing actions concerning the design and construction of buildings: suit must be filed within two years of when the plaintiff knew or should have known of the "act or omission" complained of, and no action may be brought more than 12 years after the occurrence of the "act or omission"; these two periods may be tacked, giving a maximum limitations period of 14 years (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(a), (b)). The provision was not in effect when the plaintiffs filed their complaint and therefore does not apply here. (*Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211.) Subsection (e) of section 13—214 (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(e)), which said, "The limitations of this Section shall apply to all acts or omissions which occur on or after November 29, 1979," has been deleted by revisory legislation, Public Act 82—783, to incorporate in the Code the same deletion that had been made in the provision's earlier incarnation, section 21.3, by Public Act 82—539.

■■ ■ The discovery rule applies to actions of architectural malpractice that are brought under section 15 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 16). (*Society of Mount Carmel v. Fox* (1974), 31 Ill. App. 3d 1060, 335 N.E.2d 588, *appeal after remand* (1980), 90 Ill. App. 3d 537, 413 N.E.2d 480.) The accrual of a cause of action starts the limitations clock; under the discovery rule a cause of action does not accrue until "a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused" (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415, 430 N.E.2d 976, 980, paraphrasing *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864, and *Witherell v.*

*Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869 (unlike the plaintiffs we do not interpret *Knox College* (leaky roof on a relatively new building) as applying the discovery rule to architectural malpractice, for in that case the supreme court dismissed the only count against the architects because it combined two causes of action, tort and contract; the opinion discusses the rule in the course of analyzing the timeliness of three counts alleging tortious misrepresentation and fraud against the supplier of the roofing materials)). The plaintiffs focus their argument on the second clause of the discovery rule—determining when a party knows or should know that the injury was wrongfully caused—and argue that in this case that is a question of fact rather than law.

█ Discussing *Nolan* and *Witherell*, the court in *Knox College* cautioned that knowledge of wrongful cause does not mean knowledge that the defendant was negligent or "knowledge that an actionable wrong was committed"; knowledge of wrongful cause falls short of those legal certainties and is instead knowledge that requires a potential plaintiff to investigate and ask whether he has a cause of action, that is, whether the defendant has committed an actionable wrong. (88 Ill. 2d 407, 415-16, 430 N.E.2d 976, 980.) *Knox College* also says:

> "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences. As we held in *Witherell* and *Nolan*, this is usually a question of fact ***." 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81.

The affidavits submitted by the defendant show clearly that defects were apparent as long ago as 1957. Jasper Harmon Smith, Jr. says in his affidavit that he has worked in the building since April 1954 and that the following damage has been visible since 1957: (1) In the parts department "the floor on either side of the loading dock has subsided approximately four inches"; (2) also in the parts department the south inside wall has cracked and "the floor has subsided approximately three inches"; and (3) outside the building the foundation on the south side of the parts department has cracked. LeRoy. James Franke, who has worked in the building since April 1954, mentions the same three defects listed by Smith and also (4) the floor on the north part of the service department has subsided, and (5) the floor on the southeast side of the salesroom has subsided about two inches. Franke has noticed all five defects since 1957. George W. Holliday has worked in the building since 1962; he lists the same five defects that Franke does and has noticed them since 1962. Luther E. Hullett be-

gan working in the building in April 1954 and since 1957 has noticed four of the five problems above, omitting the crack in the foundation. Edward J. Ebbing has worked in the building since April 1954. He lists the five defects mentioned by Franke and Holliday and says that those began in 1957. Ebbing also lists another problem, which developed in 1962: (6) outside the building, at the southwest corner of the parts department, a crack runs from a window down to the west foundation.

The plaintiffs do not dispute that defects were noticeable in 1957 and do not argue that the complaint is based on defects different from the ones listed in the five employees' affidavits; rather, they say that three subsidences have occurred—one in 1957, one in 1962, and one in 1976—and that they are suing for the subsidence of 1976. The plaintiffs argue that the motion for summary judgment should have been denied because the defendant has not disputed the occurrence of the last subsidence. The implication of this argument is that even if the earlier subsidences were actionable, the last subsidence has given rise to a new cause of action. The complaint alleges:

"5. Defendant had a duty to design a structure and formulate specifications for its construction proper and adequate for the site location.

6. Although defendant had knowledge prior to construction that the construction site subsurface was altered from its natural state by excavation and 'filled-in basement' and the nature of the bearing soil was otherwise not suited for the purpose intended, he negligently failed to design and formulate specifications for the construction of the [building].

7. As a direct and proximate result of defendant's negligence, a subsidence of the bearing soil occurred in August, 1976, causing extensive structural damage to the Building."

The plaintiffs' experts attributed the 1976 subsidence to the building's location atop rubble. The rubble has been under the building since its construction, and given the defendant's affidavits, the last subsidence signifies merely that whatever problem exists has not cured itself since 1957, when sinking and cracking were first apparent, but is continuing. The 1976 subsidence therefore does not represent a new cause of action. The plaintiffs should have investigated the building's problems before 1976, and the trial court correctly decided as a matter of law that that inquiry should have begun more than five years before the plaintiffs sued.

In granting the defendant summary judgment the trial court cited *Auster v. Keck* (1976), 63 Ill. 2d 485, 349 N.E.2d 20, and ob-

served that a plaintiff alleging negligent design must also allege that the defect was not discovered at an earlier time. The complaint here does not allege that the defects in the building could not have been discovered before 1976. This was not the reason why the trial court granted summary judgment, but the defendant raises it on appeal. The sufficiency of a complaint must be attacked by motion (Ill. Rev. Stat. 1981, ch. 110, par. 2—615), which the defendant did not do; he instead moved for summary judgment, which "almost necessarily assumes that a cause of action has been stated" (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406, 312, N.E.2d 605, 609). Thus, the defendant has waived the objection. *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.

█ █ As an alternative ground for affirming the decision the defendant argues that he did not owe the plaintiffs any duty; the trial judge rejected this. In his motion for summary judgment the defendant asserted that he was discharged from his contractual duties by the plaintiffs August 29, 1953, before the excavation, and did not know then about the conditions underground; he repeated this in an affidavit. Plaintiff Ennis' second affidavit said that the defendant was told about the underlying rubble and changed some plans in response. The scope of the defendant's duty therefore was in question, and the trial court correctly refused to grant summary judgment on that issue.

Affirmed.

GREEN, P. J., and MILLS, J., concur.