**UNR INDUSTRIES, INC., et al., Plaintiffs,**

**v.**

**AMERICAN MUTUAL LIABILITY INSURANCE CO., Defendant.**

Nos. 88 C 3254 (84 C 6475), 82 B 9841–9851 (85 A 1429).

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1988.

W. Boyd Reeves, John G. Jacobs, Armbrecht, Jackson, Demovy, Crowe, Holmes & Reeves, Mobile, Ala., Jonah Orlofsky, Plotkin & Jacobs, Chicago, Ill., Stuart I. Parker, Kennard M. Goodman, Siff, Newman, Rosen & Parker, P.C., New York City, for American Mut. Ins.

Malcolm M. Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., Bruce D. Ryan, Ronald M. Oster, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., Paul A. Zevnick, Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., for UNR Industries, Inc.

### ORDER

HART, District Judge.

This matter is before the court for consideration of the written reports of the United States Bankruptcy Court filed April 18, 1988 and August 15, 1988.

UNR Industries, the debtor in Chapter 11 proceedings pending before the bankruptcy court, brought an adversary complaint against the defendant American Mutual Liability Insurance Company. Because UNR demanded a jury this court granted its motion to withdraw the complaint. However, because in many aspects the complaint related to matters pending before the reorganization court, the complaint was referred to the bankruptcy court for pretrial proceedings and supervision of a final pretrial order. During the course of these proceedings UNR filed an amended complaint and the defendant moved to dismiss. After extensive briefing and oral

argument the bankruptcy court filed an extensive written report recommending that the complaint be dismissed and that judgment be entered for the defendant. After the initial report UNR moved for leave to again amend its complaint. In a second report, after briefing, the bankruptcy judge adhered to his original recommendation.

On appeal to this court the court has reviewed the record and considered the oversized briefs filed in this court dealing with UNR's objections to the bankruptcy judge's analysis.

This court agrees with the conclusions reached by the bankruptcy court. Those reports set forth a most careful and thorough consideration of the issues. The objections do not require further elaboration or discussion of the cited authorities.

IT IS THEREFORE ORDERED that the reports of the bankruptcy court filed April 18, 1988 and August 15, 1988 are adopted as the conclusions of this court and that the Clerk of the Court is directed to enter a judgment in favor of defendant dismissing this case with prejudice and with costs awarded to the defendant.

### MEMORANDUM OPINION AND REPORT AND RECOMMENDATION TO THE DISTRICT COURT

#### March 11, 1988

RONALD S. BARLIANT, Bankruptcy Judge.

Defendant, American Mutual Liability Insurance Company, ("American Mutual") has moved to Dismiss the First Amended Complaint of the debtor-plaintiffs, UNR Industries, Inc., and its wholly-owned subsidiaries ("UNR"). That motion should be granted.

### I. BACKGROUND AND HISTORY OF THE ADVERSARY PROCEEDING

UNR and its predecessor corporations were manufacturers of asbestos products until 1970. Ingalls Shipbuilding Corporation, ("Ingalls") and Bath Iron Works ("Bath") bought and used some of those products in their Navy shipyard activities. After years of continued exposure to UNR's products, employees of Ingalls and Bath developed asbestosis and 485 of those employees asserted claims against UNR. These claims are among 17,000 against UNR for asbestos related injuries as of July, 1982 when UNR took shelter under Chapter 11 of the United States Bankruptcy Code.

The Defendant, American Mutual, provided general liability insurance to UNR and its predecessors until 1964, but did not cover the asbestos-related products liability claims. American Mutual also provided insurance coverage, including workers' compensation insurance, to Ingalls and. Bath when they were using UNR's asbestos products and when American Mutual was UNR's general liability insurer. American Mutual conducted periodic health and occupational safety inspections of Ingalls and Bath, and inspected UNR's manufacturing facilities.

UNR's Amended Complaint seeks to impose liability upon American Mutual for UNR's losses resulting from the asbestos cases. That pleading is not founded upon any insurance policy, but upon a variety of tort theories. The heart of UNR's amended complaint is this: Although American Mutual insured the shipyards and UNR at the same time, and although American Mutual inspected the shipyards and UNR's manufacturing facilities and knew or should have known of the dangers of asbestos, American Mutual failed to disclose to UNR that its products were being manufactured and used at the shipyards in an unsafe manner; failed to ensure that UNR had adequate liability insurance; and failed to protect against the unsafe use of UNR's products. The issue here is whether UNR is entitled to relief on these allegations.

This adversary proceeding has had a somewhat tortured history. UNR filed its original complaint on July 27, 1984 in the District Court, where it was assigned to Judge Grady. American Mutual then moved to transfer the case to Judge Hart, who was hearing another proceeding brought by UNR against American Mutual

and other insurance companies. In that other proceeding, UNR voluntarily dismissed its claims against American Mutual; Judge Hart then denied American Mutual's Motion to transfer this proceeding. American Mutual then filed a motion to dismiss. In October, 1985, Judge Grady determined that this matter should have been filed in the Bankruptcy Court and on November 13, 1985, it was referred to the Bankruptcy Court.

On American Mutual's motion, Judge Hart, on April 10, 1986, withdrew the reference, but re-referred the proceeding back to the Bankruptcy Court with instructions that this Court supervise the proceeding through completion of a final pretrial order and make a report and recommendation that (1) resolves all non-jury issues, and (2) describes what issues must be tried to a jury.

After Judge Hart's referral, this proceeding moved forward into discovery before Bankruptcy Judge Toles. Judge Toles retired and this adversary proceeding was assigned to Bankruptcy Judge Ginsberg. In October, 1986, UNR obtained leave to amend its complaint. UNR filed its First Amended Complaint, which is the complaint now before this Court, on December 5, 1986.

American Mutual moved to dismiss UNR's First Amended Complaint on January 27, 1987. At American Mutual's request, discovery has been held in abeyance pending a ruling on the Motion to Dismiss. That motion has been briefed and Judge Ginsberg heard arguments on September 22, 1987. On January 12, 1988 this proceeding was transferred to Judge Barliant.

## II. THE AMENDED COMPLAINT

In Counts I and II of its nine count Amended Complaint, UNR seeks indemnity, contribution or apportionment from American Mutual for the claims by Ingalls (Count I) and Bath (Count II) workers.

American Mutual provided workers' compensation, comprehensive general liability and other insurance coverage to Ingalls and Bath, and inspected the shipyards for safety purposes. The inspections, which included asbestos dust counts, were conducted while American Mutual also insured UNR. In conducting the inspections and advising the shipyards, American Mutual undertook their duties to the workers and others to assure the safe use of UNR's products. UNR, Ingalls and Bath considered the inspections essential to the insurance services, and Ingalls and Bath relied on the inspections to detect hazards. American Mutual knew or should have known the hazards of asbestos and the threat it posed to workers when the inspections were conducted. American Mutual gave no warning of the hazards to UNR, Ingalls or Bath and failed to recommend safety precautions.

UNR alleges that American Mutual's negligent conduct of the inspections, and its failure to warn of the dangers was the proximate cause of injury to the workers and the damage claims against UNR. UNR itself "was not negligent or otherwise at fault," although it is "potentially liable to claimants in the asbestos cases on the basis of strict liability without fault." Amended Complaint ¶¶ 29 and 50. American Mutual, on the other hand, "bears far more culpability for claimants' injuries because American Mutual's conduct was grossly negligent, wanton and reckless" in its conduct of safety inspections. Amended Complaint ¶¶ 33 and 54. Since American Mutual's fault was active, while UNR's was passive, UNR seeks indemnification for the workers' claims. Alternatively, American Mutual's negligent inspections proximately caused the workers' injuries, entitling UNR to contribution.

In Counts III and IV, UNR alleges that American Mutual breached fiduciary duties owed to UNR. In Count III, American Mutual's breach consisted of its failure to recommend adequate measures to protect UNR from liability; in Count IV, its breach was its failure to recommend adequate insurance coverage.

From 1935 until 1964, American Mutual was the direct writer of UNR's liability insurance policies. As such, American Mutual was the equivalent of an insurance broker, and UNR relied on American Mutu-

al's professed expertise and superior knowledge about insurance requirements of asbestos manufacturers. American Mutual's advertising and marketing represented that it would investigate unsafe conditions and develop insurance to adequately protect the insured and UNR relied on these representations.

American Mutual knew of the asbestos hazard, and (because of its inspections) the unsafe use of UNR products at Ingalls and Bath. American Mutual knew that UNR was unaware of these facts, yet failed to disclose them to UNR. American Mutual also failed to recommend discontinued production and sales of the unsafe asbestos products. These were breaches of American Mutual's fiduciary duties to UNR. These breaches proximately caused injury to UNR in the form of costs and damages paid to asbestosis claimants.

Count IV (dealing with American Mutual's failure to recommend adequate insurance) alleges that American Mutual provided no products liability insurance to UNR and specifically excluded such coverage in its general liability policies to UNR. American Mutual knew of the asbestos hazard at the shipyards, knew that UNR products were being used in an unsafe manner which exposed UNR to liability and knew that UNR was unaware of the hazards. Nevertheless, American Mutual failed to provide adequate insurance coverage, although it did not consider products liability coverage for an asbestos manufacturer an unacceptable underwriting risk. Without UNR's knowledge, American Mutual excluded products liability coverage when it knew the extensive risks to which UNR was exposed. UNR alleges that these facts establish a fiduciary duty in American Mutual and their failure to provide adequate insurance coverage breached that duty and proximately caused damages to UNR.

Counts V, VI and VII allege that American Mutual breached duties of good faith and fair dealing. The breach alleged in Count V is the failure to recommend or assure steps to prevent asbestos related injuries; in Count VI, the failure to recommend adequate insurance coverage; and in Count VII, the failure to disclose American Mutual's position that asbestos claims were not covered under its liability policies.

In support of those theories, UNR alleges that the insurance contracts between UNR and American Mutual imposed an implied duty on American Mutual to act in good faith and deal fairly with UNR. American Mutual failed to warn UNR of the hazards discovered in the inspections associated with UNR's asbestos products and put its own financial interests ahead of UNR's by failing to disclose relevant information or recommend adequate coverage.

Count VIII alleges that American Mutual negligently misrepresented the safety of conditions at UNR facilities in North Carolina.

American Mutual, which had superior knowledge of asbestos hazards, conducted inspections of UNR's facilities and issued reports that indicated that UNR's manufacture of asbestos products did not result in health hazards. As American Mutual could have foreseen, UNR relied on these representations and continued to manufacture and sell the asbestos products. By making those incorrect representations, American Mutual breached its duty to exercise reasonable care in the preparation of its reports about the safety of UNR's manufacturing methods. UNR's payments of settlements, judgments and costs in the asbestos cases proximately resulted from the negligent misrepresentations.

Finally, Count IX alleges that American Mutual negligently conducted inspections at Ingalls and Bath, which caused injury to UNR.

American Mutual had knowledge of the unsafe conditions at Ingalls and Bath. American Mutual had a duty to use reasonable care to avoid harm to UNR. That duty was breached by American Mutual's negligent inspections at Ingalls and Bath.

### III. JURISDICTION AND PROCEDURE

This adversary proceeding is related to UNR's Chapter 11 bankruptcy case, but it

is not a "core proceeding" under 11 U.S.C. § 157(b). This Court has jurisdiction to hear this proceeding under both 28 U.S.C. § 157(c)(1) and Judge Hart's April 10, 1986 referral, but it does not have jurisdiction to enter a final order.

This opinion constitutes the "proposed findings of fact and conclusions of law" called for by 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033,[1] and the "report and recommendation" called for by Judge Hart's referral order. Bankruptcy Rule 9033 will govern procedures after the filing of this opinion.

## IV. STANDARDS OF REVIEW

In considering the sufficiency of a complaint to withstand a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In addition, the Court must take as true all material facts well pleaded and must view these facts, and all reasonable inferences which can be drawn from them, in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985).

The parties in their memoranda of law occasionally allege facts not in the complaint. These supplemental allegations should be, and have been, ignored. The Court may only consider the well pleaded allegations in the complaint when ruling on the defendant's Rule 12(b) Motion. *Car Carriers, Inc., v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984).

## V. SUMMARY OF CONCLUSIONS OF LAW

Count I (for indemnification or contribution regarding Ingalls workers) should be dismissed for lack of subject matter jurisdiction, except to the extent that Count I relies upon asbestos cases that UNR has settled. To that extent, however, Count I

fails to state a claim upon which relief can be granted because (1) relief is barred by the applicable workers' compensation laws, and (2) UNR has not stated a claim for indemnity or contribution under Mississippi law.

Count II (for indemnification or contribution regarding Bath workers) should be dismissed for lack of subject matter jurisdiction.

Counts III through IX should be dismissed as barred under the statute of limitations. Otherwise, Counts III and IV (breach of fiduciary duties) and VIII (negligent misrepresentation) state actionable claims. Counts V through VII (breach of duties of good faith and fair dealing) and Count IX (negligent inspection), however, fail to state claims upon which relief can be granted, even apart from the limitations bar.

## VI. CONCLUSIONS OF LAW

A. *There is no federal subject matter jurisdiction over Counts I and II, to the extent that they seek a determination of American Mutual's obligation to indemnify UNR for pending asbestos claims.*

▪ UNR alleges that it has settled three asbestos claims by Ingall's employees, but that an additional 459 such cases are pending. UNR further alleges that 26 claims against it arising from asbestos exposure to Bath workers are pending. UNR seeks, in Counts I (Ingalls) and II (Bath), not only indemnification for the three settled cases, but indemnification for all sums "which UNR will be required to pay in the future to claimants in the asbestos cases." Amended Complaint, Prayer for Relief, ¶ 1. UNR has not conceded that it is liable in the pending cases, but has alleged only that it "is potentially liable and has a reasonable apprehension of liability." Amended Complaint, ¶ 5. UNR therefore seeks a determination of American Mutual's obligation to indemnify for claims for which

---

**1.** Of course, on a Motion to Dismiss, there are no "findings of fact" in the usual sense. Section 157(c)(1) and Bankruptcy Rule 9033 obviously apply to proposed final orders on dispositive motions, even if the terminology is awkward.

UNR's own liability has been neither judicially determined nor admitted, and that UNR has not settled.

American Mutual contends that Counts I and II do not state a justiciable case or controversy with respect to the pending asbestos claims, and therefore this Court and the District Court lack subject matter jurisdiction to that extent. The Court agrees.

The controlling authority is *Forty–Eight Insulations v. Johns–Manville Products,* 472 F.Supp. 385, 393–95 (N.D.Ill.1979), which applied the holding in *Cunningham Bros. Inc. v. Bail,* 407 F.2d 1165 (7th Cir. 1969), *cert. denied.,* 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969), in a context very similar to this one. In *Forty–Eight Insulations,* the plaintiff had used asbestos, purchased from the defendant, in the manufacture of its products. The plaintiff was a defendant in asbestos-related personal injury cases, and contended that its liability in those cases was dependent upon a showing that the asbestos it purchased from the defendant was unreasonably dangerous.[2] Just as UNR does here, Forty–Eight Insulations sought a judgment for indemnification for future liability in the pending cases. The Court held that the complaint failed to show either an "actual controversy" under 28 U.S.C. § 2201 (the statute creating the right to a federal declaratory judgment) or a "case or controversy" under Article III, Section 2 of the Constitution.

The Court relied primarily upon *Cunningham Bros.,* in which the Seventh Circuit affirmed the dismissal of a general contractor's complaint seeking a declaration of its right to indemnity from a subcontractor for amounts that might be paid in the future in pending personal injury claims against the general contractor. As the District Court interpreted *Cunningham Bros.,* that opinion,

> states the general proposition that declaratory relief as to indemnity is unavailable if liability in the underlying action has not been established.

472 F.Supp at 394.[3]

UNR's complaint falls squarely within the holdings in *Forty–Eight Insulations* and *Cunningham Bros.* Here, as in those cases, UNR is seeking a determination of American Mutual's obligation to indemnify against UNR's liability before it has been established that UNR itself has any such liability. But UNR advances several reasons why, nevertheless, a sufficient case or controversy exists in this adversary proceeding.

First, UNR points out that it is a Chapter 11 debtor seeking to put together a successful plan of reorganization. UNR argues that the asbestos claims will be dealt with under Section 502(c)(1) of the Bankruptcy Code, which provides that,

> there shall be estimated for purpose of allowance under this section—

---

**2.** In this respect, Forty–Eight Insulation's claim was stronger from a justiciability point of view than UNR's. Here, unlike the plaintiff in *Forty–Eight Insulation,* UNR does not allege that it's liability in the asbestos cases depends upon a finding of facts that would necessarily render American Mutual liable.

**3.** Judge Shadur followed *Forty–Eight Insulation,* and Judge Marshall's interpretation of *Cunningham Bros.,* in *National Union Fire v. Continental Illinois,* 646 F.Supp. 746, 750 (N.D.Ill.1986) holding that insurers' claim that, if they are required to pay under their policies, auditors are liable to the insurers for the amounts of those payments is not justiciable because the insurers' liability is contingent. A later opinion in the same litigation suggests the answer to UNR's argument that this proceeding is like a third-party action under F.R.Civ.P. 14. In a proper Rule 14 case, the principal action—the claim against which the third-party plaintiff seeks indemnity—is a "live claim" before the court. Rule 14 "has the effect of accelerating the time for determining a party's right to indemnity, even though that right is contingent upon the establishment of liability in a pending claim in the main action." *Nat. Union Fire Ins. Co. v. Continental Ill. Corp.,* 658 F.Supp. 781, 794 (N.D.Ill.1987). UNR's claim here is not tied to a justiciable controversy in the same proceeding, but merely asks the court a "what if" question—if UNR is ultimately found liable in some other proceedings, what is American Mutual's obligation? UNR "essentially seek[s] an insurance policy" against future risks (*National Union Fire,* 646 F.Supp. at 750), not a determination of rights based on a concrete set of facts before the same court at the same time.

(1) any contingent or unliquidated claim, unduly delay the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case....

UNR suggests that all its resources would be exhausted if it were required to litigate the thousands of pending asbestos claims and therefore final judgments on those claims should not be required to establish its right to indemnity from American Mutual.[4] Rather, in recognition of the special considerations applicable to a Chapter 11 case, UNR should be permitted to go forward with its claim for indemnification against American Mutual.

All of these arguments miss the point. What is missing here is "a real and substantial controversy admitting specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). Applying that standard, the Court in *Forty–Eight Insulations*, 472 F.Supp. at 395, held that:

> We cannot issue a declaratory judgment as to plaintiff's right to indemnity in abstract terms. Any declaratory judgment as to the liability of any defendant would have to make reference to specific cases, because only specific cases with concrete sets of facts will lend the requisite controversy to the declaratory relief.

Under Article III, federal courts lack the power to decide "hypothetical" or "abstract" questions—however important those questions may be, the power to decide them is legislative not judicial. Neither the importance of this matter nor UNR's "practical" problems, nor its status as a Chapter 11 debtor in possession make this dispute less "hypothetical" or "abstract".

UNR next contends that it has suffered a concrete injury because it has incurred substantial costs in the defense of the pending asbestos cases. UNR has alleged only a non-contractual right to indemnification. It has not alleged that American Mutual has an obligation to defend the asbestos claims. Therefore, defense costs are not the injury for which UNR is seeking relief. UNR is seeking relief from damages incurred in connection with claims for which UNR has liability. Thus, "the fact that [UNR has] already incurred some expenses in defending those actions does not make ripe [the] claims for indemnification against all potential liability and expenses." *A/S J. Ludwig Mowinckles Rederi v. Tidewater Construction Corp.*, 559 F.2d 928, 932 (4th Cir.1977). In accord, *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1388 (11th Cir.1982).

UNR relies on three cases to support its proposition that the incurring of defense costs renders this dispute a constitutional case or controversy. Those cases are readily distinguishable. *Ellerman Lines Ltd. v. Atlantic Gulf Steveadoors, Inc.*, 339 F.2d 673 (3rd Cir.1964), involved an action by a shipowner on a breach of warranty claim. The cost of defending the related injury action was simply an element of damages for that breach. The other two cases cited by UNR involved declaratory judgments of the obligations of insurers under insurance policies. Both policies involved obligations to defend as well as obligations to indemnify. More important, the dispute in those cases involved the construction of contract terms, specifically whether the policies covered the underlying tort claims. The construction of those contract terms did not have to await the outcome of the underlying cases because the answer to the coverage issue depended upon the basis of the claims, not the insured's ultimate liability. *AC & S Inc. v.*

4. Contrary to UNR's assertion, it is not necessary that final judgments be entered in all the asbestos cases before American Mutual's indemnity obligation can be litigated. American Mutual itself has not raised the subject matter jurisdiction objection to the settled claims, although liability in those claims was not established by final judgement. It is generally recognized that a claim for indemnification may be predicated upon a settlement of the underlying claim, provided the indemnitee can show that the settlement was entered into under the reasonable apprehension of liability. *See, Fortenot v. Mesa Petroleum Co.*, 791 F.2d 1207 (5th Cir.1986), *In re Carey Transportation, Inc.*, 72 B.R. 767, 776 (Bkrtcy.S.D.N.Y.1987).

*Aetna Cas. & Sur. Co.*, 666 F.2d 819 (3rd Cir.1981); *Keene Corp. v. Insur. Co. of North America*, 667 F.2d 1034 (D.C.Cir. 1981), *cert. denied* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

Here, UNR is not seeking the construction of a contract, nor is it alleging the breach of a contractual duty (as in *Ellerman*). Rather, it is seeking a declaration of common law indemnity. That critical distinction was recognized in *Cunningham Bros.* "However, in the normal indemnity situation, where, as here, no contractual duty to defend exists, no duty to do anything arises until the alleged indemnitee is adjudged liable." *Cunningham Bros.*, 407 F.2d at 1169.

UNR also contends that since *Forty–Eight Insulations* was decided it has become more likely that asbestos manufacturers will be liable to at least some claimants, and therefore UNR has a more reasonable apprehension of liability than Forty–Eight Insulations. But the odds against UNR do not supply concrete facts on which to judge American Mutual's liability. Only specific cases can do that. What if UNR is liable to one category of workers but not to others? The focus would then be on what American Mutual did with respect to the workers in that category, and whether that contributed to the injuries. But without real facts, those determinations cannot be made. *Cf., Forty–Eight Insulations*, 472 F.Supp. at 395.

Finally, UNR points out that under bankruptcy law, a properly filed proof of claim is "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Since there are no objections to the asbestos claims, UNR argues that they are allowed and therefore the equivalent of civil judgments. But the importance of a civil judgment in an indemnity case is that it establishes a critical fact: the indemnitee's liability to the injured party. Here, UNR's liability is not fixed by the mere filing of proofs of claims because UNR continues to have the right to object to those claims and litigate its liability. There is no time limit

on UNR's right to object (*see*, 3 Collier on Bankruptcy, ¶ 502.01[3] (15th ed. 1987)), and its counsel vigorously denied at oral argument that UNR's failure to object so far constitutes an admission of liability. "I didn't say we admit liability at all. You didn't hear me say that." Tr. of Proc., Sept. 22, 1987, p. 60. Because UNR can object to the asbestos claims at any time, and deny liability, the issue of UNR's underlying liability (a necessary predicate to American Mutual's liability) remains as abstract and hypothetical as it was in *Forty–Eight Insulations*.

For these reasons, Counts I and II must be dismissed for lack of subject matter jurisdiction, except to the extent that Count I seeks indemnification for the three settled Ingalls claims.

B. *American Mutual is immune under the applicable worker's compensation statutes from the claims alleged in Count I.*

In Count I, UNR seeks indemnification and contribution for asbestos claims made by workers at Ingalls for injuries contracted during their employment.[5] UNR further alleges that American Mutual was the workers' compensation carrier for Ingalls when its employees contracted asbestos-related injuries. American Mutual asserts that it is immune from liability for indemnification or contribution under the applicable workers' compensation statutes. The Court agrees.

As shipyard workers, the asbestos claimants were concurrently covered by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.* (the federal workers' compensation program governing shipyard workers, *id*, § 902(3)) and the Mississippi Workmen's Compensation Act, Miss. Code Ann. § 71-3-1 (1972). *See, Drake v. Raymark Industries, Inc.*, 772 F.2d 1007, 1020 (1st Cir.1985).

Both statutes contain provisions under which an employer's obligation to pay com-

---

**5.** Having decided that there is no federal subject matter jurisdiction over any part of Count II, this Court will not discuss American Mutual's other defenses to that Count.

pensation on account of an employee's injury is exclusive and in place of any tort liability for that injury. 33 U.S.C. § 905(a); Miss. Code Ann. § 71-3-9. Under both statutes, employers are protected, not only from employees' tort claims, but also from non-contractual indemnification or contribution claims by third parties who are liable to the employees. *Drake*, 772 F.2d at 1019, 1022 (LHWCA); *Ketchum v. Gulf Oil Corp.*, 798 F.2d 159, 161 (5th Cir.1986) (LHWCA); *Smith Petroleum Service Inc. v. Monsanto Chemical Co.*, 420 F.2d 1103, 1112 (5th Cir.1970) (Mississippi law "would stand as a Horatio at the bridge to bar Monsanto's claim to indemnity from Smith."); *Ramsey v. Georgia–Pac. Corp.*, 597 F.2d 890, 893 (5th Cir.1979) (Mississippi law).

Workers' compensation carriers are also immune from tort claims by their insureds' employees arising from work-related injuries. *Johnson v. American Mut. Liability Ins. Co.*, 559 F.2d 382, 388-90 (5th Cir.1977) (carrier immune under LHWCA from employee's claims alleging negligent inspections); *Taylor v. U.S. Fidelity & Guaranty Co.*, 420 So.2d 564 (Miss.1982) (carrier immune under Mississippi law from employee's tort action alleging negligent and willful refusal to process and pay claims for medical expenses); *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1339 (8th Cir.1985) ("today the carrier would be held immune [under Mississippi law] from suit for its negligence in the making of safety inspections of an employer premises").

No case cited by the parties directly holds that a carrier (such as American Mutual) is immune from suit for indemnity or contribution by a third party (such as UNR) liable in tort to the injured employee. But under the authorities cited in the preceding paragraph, a carrier's immunity is co-extensive with the employer's. "[S]ince the [LHWCA] charges the carrier with the liability of the employer ... the carrier is likewise entitled to the immunities of the employer, and ... Congress never contemplated the carrier's being held liable for damages as distinguished from compensation." *Johnson*, 559 F.2d at 390. In Mississippi a negligence claim against a carrier

is barred under the statute limiting the employer's liability. *Taylor*, 420 So.2d at 566.

Furthermore, the policy reasons that support the extension of the employer's immunity to the carrier when the employee sues similarly support carrier immunity when a third party tort-feasor seeks indemnification or contribution. Those policy reasons are extensively discussed in *Kifer*, 777 F.2d at 1334-37, and summarized as follows:

> In holding the carrier immune from this kind of suit, these courts [i.e., courts of several jurisdictions construing workers' compensation acts] generally have considered the adverse consequences of a contrary conclusion in light of the purposes and policies underlying the entire statutory scheme of workers' compensation. Those consequences include, among others, the potential for unlimited liability of workers' compensation carriers, a substantial increase in workers' compensation insurance premiums for all employers, the abandonment of many safety programs currently undertaken by workers' compensation carriers, and a breakdown in the expeditious and informal administration of workers' compensation claims, all to the detriment of employees and employers alike.

*Id.* at 1334. Denying immunity to carriers from indemnity and contribution claims would have the same consequences. American Mutual, as Ingalls' workers' compensation carrier, enjoys immunity from such claims here.

UNR alleges, however, that American Mutual was also Ingalls' general public liability carrier, not merely its workers' compensation carrier, and that it performed inspections pursuant to both types of policies. "If [American Mutual] conducted the inspections in its role as general liability insurer," UNR argues, "it did not stand in the shoes of employers, and is not immune from suit under workers' compensation laws." Opposition of UNR 72. UNR argues further that American Mutual's role is an issue of fact.

It is correct that "immunity under the workers' compensation statute should be limited to only those activities undertaken by the workers' compensation insurance carrier that are integral to its function as such." *Kifer*, 777 F.2d at 1339, n. 13 (*dicta*).[6] *In accord, LaTour v. Commercial Union Ins. Co.*, 528 F.Supp. 231, 234 (D.R. I.1981). ("[W]orkers' compensation carriers should enjoy immunity from liability only for activities undertaken in their role as compensation carriers.")

The allegation that survived a motion to dismiss in *LaTour*, however, was that the carrier, "acting not in its role as workers' compensation insurer, but in its capacity as general liability insurer and risk management consultant, undertook to perform certain safety inspections at the [insured's] plant...." 528 F.Supp. at 233. The court in *LaTour* made it clear that the plaintiff had the burden of separating the carrier's roles as workers' compensation insurer, on the one hand, and general liability insurer and risk management consultant, on the other.

The Wisconsin Supreme Court in *Kerner v. Employers Mutual Liability Insurance Co.*, 35 Wis.2d 391, 151 N.W.2d 72, 77 (1967), stated that, "The dual roles of the compensation insurance carrier are so intertwined that the existence of the compensation claim as the exclusive remedy means no cause of action against that carrier." To the extent that the roles of compensation carrier and liability insurer are indeed "intertwined," problems of proof may arise. Plaintiffs will bear the burden of proving that the allegedly negligent inspections in the case at bar *were not related to CU's role as workers' compensation insurer, and would have been performed even if CU had not been the workers' compensation carrier of Peterson/Puritan.*

528 F.Supp. at 235 (emphasis added).

Here, UNR's complaint is much different than the complaint in *LaTour*. UNR has alleged that American Mutual wrote workers' compensation and general liability insurance policies for Ingalls (Amended Complaint ¶ 17); that "These policies gave American Mutual the contractual right to inspect Ingalls' premises" (Amended Complaint ¶ 18); that American Mutual conducted "occupational safety and health inspections" "to ensure the use of UNR's products in a safe manner and to perform Ingalls' duty to their employees and others, including UNR, of assuring safe and healthful work place premises." (Amended Complaint ¶¶ 20–21.)

UNR has therefore alleged that American Mutual conducted negligent inspections in connection with both the workers' compensation and general liability policies. It has not alleged that American Mutual would have conducted those inspections even if it had not written the workers' compensation policies. More important, UNR has alleged that American Mutual made those inspections in the performance of the employer obligations to employees "of assuring safe and healthful work place premises." That is precisely the obligation that is the subject of the workers' compensation laws, and it is precisely tort liability for breach of that obligation that is barred by their exclusivity provisions.

Even liberally construed, these allegations inextricably link the inspections to American Mutual's role as workers' compensation carrier and negate the possibility that they were performed solely in its role as liability carrier. Count I itself shows those roles to have been "so intertwined" that UNR's claim is barred by the exclusivity provisions of the applicable workers' compensation statutes. To the extent the Court has jurisdiction over Count I (that is, to the extent Count I seeks indemnification or contribution for settled claims), that Count should be dismissed for that reason.

C. *Count I fails to state a claim for relief under applicable state law.*

American Mutual's final argument directed to Count I is that it fails under Mississippi law. UNR's claim for indemnity or contribution with respect to Ingall's is

---

**6.** *Kifer* went on to hold that "The making of safety inspections of an employer's premises is such an activity, and the carrier is therefore entitled to the statutory immunity." *Id.*

governed by Mississippi law, where the Ingalls shipyard is located, Ingalls workers contracted their injuries and American Mutual performed the acts upon which UNR's claims are based.

■ Although there are no Mississippi cases directly on point, other courts have uniformly held that manufacturers of asbestos, strictly liable for asbestos-related injuries, are not entitled to non-contractual indemnity from other tort-feasors. Generally, these authorities hold that strict liability is an "active" fault, and that, therefore, indemnification is not available on the traditional "active/passive" theory. *White v. Johns–Manville, Corp.*, 662 F.2d 243, 249–50 (4th Cir.1981); *Glover v. Johns–Manville, Corp.*, 662 F.2d 225, 228 (4th Cir. 1981); *In re All Asbestos Cases*, 603 F.Supp. 599, 606–07 (D.Hawaii 1984); *In re General Dynamics Asbestos Cases*, 539 F.Supp. 1106, 1112 (D.Conn.1982) ("the purchaser of a product owes no duty to its supplier to use the product in a particular manner.")

Mississippi follows the general rule that "a right of indemnity arises in favor of one not actively at fault against an active wrongdoer." *Bush v. City of Laurel*, 215 So.2d 256, 260 (Miss.1968), quoting with approval, *St. Louis & San Francisco Railway v. United States*, 187 F.2d 925, 927 (5th Cir.1951). Thus, a party liable for its active, rather than passive, fault is not entitled to indemnity in Mississippi. *Alabama Great Southern R. Co. v. Allied Chemical Corp.* 501 F.2d 94, 98–99, 102–03 (5th Cir.1974).

Although the Mississippi courts have never dealt with the precise question raised here, there is no reason to believe they would depart from the weight of authority, which holds that strict liability is active fault precluding indemnification from another tort feasor. Count I, therefore fails to state a claim for indemnification with respect to the settled cases.

Count I also fails to state a claim for contribution with respect to the settled cases. "[T]here is no right of contribution in Mississippi where the parties are joint tort-feasors", except as provided by statute. *Bush*, 215 So.2d at 260. The applicable statute allows contribution, "In any action for damages where judgment is rendered against two (2) or more defendants, jointly and severally, as joint tort-feasors...." Miss.Code Ann. 85–5–5 (1972). There is obviously no such judgment in the settled asbestos cases, and therefore UNR has no right to contribution.

### D. *The Statute of Limitations Bars Counts III Through IX.*

In Counts III through IX of its Amended Complaint, UNR alleges breaches of fiduciary duty (Counts III and IV), breaches of the duty of good faith and fair dealing (Counts V, VI and VII) and negligence (Counts VIII and IX). American Mutual contends that Counts III through IX of UNR's First Amended Complaint are barred by Illinois' five year residual statute of limitation. Ill.Rev.Stat. ch. 110 ¶ 13–205.[7] As a Chapter 11 debtor in possession, with most of the rights and powers of a trustee (11 U.S.C. § 1107), UNR benefits from the two year extension of the statute of limitations provided in 11 U.S.C. § 108(a).[8] Applying these provisions here, the claims are time barred unless they accrued on or after July 29, 1977.

■ A cause of action accrues for limitations purposes when all elements of the action are present. *Ozark Airlines Inc. v. Fairchild—Hiller Corp.* 71 Ill.App.3d 637,

---

7. As a general rule, statute of limitations considerations are deemed "procedural" requiring application of the forum state's law. Restatement (2d) of Conflicts of Laws § 142 (1972). In addition, the parties have implicitly agreed that Illinois law should apply by relying on that law in their statute of limitations arguments. That agreement also warrants the application of the Illinois statute. *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 687–88 (7th Cir.1985).

8. Section 108(a), as applied here, extends the applicable limitations period up to an additional "two years after the Order for Relief." The Order for Relief under Chapter 11 of the Bankruptcy Code resulted from UNR's voluntarily filing on July 29, 1982. The complaint in this adversary proceeding was filed on July 27, 1984, within two years after the Order for Relief. Therefore, UNR can look back to July 29, 1977 for facts giving rise to its causes of action.

639, 28 Ill.Dec. 277, 280, 390 N.E.2d 444, 447 (1979) (cause of action based on negligence), *Aetna Life & Cas. Co. v. Sal E. LoBianca & Son,* 43 Ill.App.3d 765, 2 Ill. Dec. 454, 357 N.E.2d 621 (1976), *aff'd* 69 Ill.2d 126, 12 Ill.Dec. 893, 370 N.E.2d 804 (1976) (cause of action based on breach of non-contractual duty to use reasonable care).

■ UNR alleges in Counts III through VII that the fiduciary duty and the duty of good faith and fair dealing owed to it by American Mutual arose from special facts and circumstances present while the parties' insurer/insured relationship existed. That relationship ended in 1964.

Any breaches of the fiduciary duty and the duty of good faith and fair dealing necessarily took place during that insurer/insured relationship. American Mutual allegedly failed to recommend adequate safety measures, which is the breach for Counts III and V; failed to recommend adequate insurance coverage, which is the breach for Counts IV and VI; and failed to disclose information as to UNR's potential asbestos liability which was the breach for Count VII. Since the insurer/insured relationship terminated in 1964 these alleged breaches must have occurred by 1964.

The final element of UNR's Count III through VII claims is injury resulting from the alleged breaches. That injury is the exposure to potential liability and costs from asbestos claims. That injury necessarily occurred simultaneously with the breaches of the alleged duties, since that is when that exposure was incurred. Therefore, all the elements of Counts III through VII were present by 1964.

Counts VIII and IX can be analyzed the same way. The duties to make accurate representations (Count VIII) and to use reasonable care in its inspections of Ingalls and Bath (Count IX) arose from the special circumstances surrounding UNR's and American Mutual's insurer/insured relationship. The breaches occurred when the misrepresentations were made (Count VIII) and when Ingalls and Bath were negligently inspected (Count IX), all of which necessarily occurred by 1964. As with Counts

III through VII, the injury in Counts VIII and IX—exposure to liability—occurred simultaneously with the breaches. Therefore, all elements of the final two causes of action were also present by 1964.

■ UNR asserts, however, that the statute of limitations was tolled by the Illinois Fraudulent Concealment Statute. Ill.Rev.Stat. ch. 110 ¶ 13–215. Under that statute, the statute of limitations is tolled when a potentially liable party conceals the existence of the cause of action.

If a fiduciary relationship exists between the parties, the beneficiary is not required to search for misfeasance absent prior indication of wrongdoing. Thus, the fiduciary's silence as to the existence of a cause of action is enough to toll the statute of limitations. *Chicago Park District v. Kenroy Inc.,* 78 Ill.2d 555, 37 Ill.Dec. 291, 402 N.E.2d 181 (1980). Absent a *current* fiduciary or confidential relationship, however, an affirmative act of deception by the defendant is necessary to toll the statute of limitations. Specifically, the defendant must have (1) made false representations or must have performed acts known to be false (2) with the intention to deceive the plaintiff (3) who relied to his detriment on such acts or representations. *Harvey v. Harris Trust,* 73 Ill.App.3d 280, 29 Ill.Dec. 198, 391 N.E.2d 461 (1979) *cert. denied* 445 U.S. 929, 100 S.Ct. 1316, 63 L.Ed.2d 762 (1980).

UNR contends that it need not have alleged an affirmative act of deception on the part of American Mutual, and none is alleged. The basis for this argument is that American Mutual was allegedly UNR's fiduciary. But in the cases applying fraudulent concealment to a fiduciary relationship the relationship was in existence during the period the statute of limitations was tolled. *See, e.g., Chicago Park District,* 78 Ill.2d at 562, 37 Ill.Dec. at 295, 402 N.E.2d at 185. Once the fiduciary relationship ended, the affirmative act requirement was reimposed and the limitations period began to run absent such an affirmative act. *Id.*

In the instant case, UNR does not allege facts that support the existence of a fiduci-

ary relationship beyond 1964. Nor does it allege an affirmative act of deception by American Mutual. The statute of limitations is therefore not tolled under the Illinois Fraudulent Concealment Statute.

■ UNR additionally asserts that the statute of limitations begins to run anew with each asbestos case filed against it. Again, the Court disagrees. Both cases upon which UNR relies for this proposition are easily distinguished.

UNR correctly cites *Starcevich v. City of Farmington*, 110 Ill.App.3d 1074, 66 Ill. Dec. 811, 443 N.E.2d 737 (1982) and *Anderson v. Sutter*, 119 Ill.App.3d 1070, 75 Ill.Dec. 871, 458 N.E.2d 39 (1983), for the proposition that the limitations period begins to run with each successive injury. In both cases, the plaintiffs were victims of flood damage due to the defendants negligent construction of a dam or a culvert system. The injuries resulting from the negligent acts were the repeated floods on the plaintiffs' land.

UNR's reliance upon the courts' decisions in *Starcevich* and *Anderson* is, however, misplaced. UNR fails to properly distinguish between the *injury* which is the invasion of a legal right and the *damage* which is the harm resulting from the injury. *Gillman v. Chicago Rys. Co.*, 263 Ill. 305, 306, 109 N.E. 181, 182 (1915); *see also*, 43A C.J.S. Injury at 767. UNR inappropriately draws an analogy between the repeated floods in *Starcevich* and *Anderson*, each of which restarted the limitations period, and the repeated claims filed against it for asbestos related injuries. UNR's alleged injury was the illegal invasion of its right to be informed of the unsafe nature and use of its asbestos products and its right to be properly appraised of its insurance needs. It's damage was the subsequent flood of asbestos related law suits and the costs accompanying those suits. The injuries occurred in 1964. Therefore, the statute of limitations period does not begin anew with each asbestos claim filed against UNR.

Moreover, in Illinois, if a tort arises out of a contractual relationship, the statute of limitations commences when the duty is breached, not when the damages are sustained. *West Am. Ins. Co. v. Sal E. LoBianco & Son Co.*, 69 Ill.2d 126, 129, 12 Ill.Dec. 893, 896, 370 N.E.2d 804, 807 (1977). Here, the relationship UNR alleges is contractual. It is from that relationship that any tort duty must have arisen. Since that relationship ended in 1964, any alleged breach of duty must have occurred by that year.

■ Finally, UNR argues that the statute of limitations was tolled by application of the so called "discovery rule." The discovery rule provides that the statute of limitations begins to run when "the plaintiff knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415, 58 Ill.Dec. 725, 730, 430 N.E.2d 976, 981 (1981). UNR has the burden of pleading and proving the date of "discovery". *See, Society of Mount Carmel v. Fox*, 90 Ill.App.3d 537, 46 Ill.Dec. 40, 413 N.E.2d 480 (1980).

Generally, when a plaintiff knew or should have known of the injury and whether the injury was wrongfully caused are questions for the trier of fact. *Lipsey v. Michael Reese Hospital*, 46 Ill.2d 32, 262 N.E.2d 450 (1970). However, where it is clear on the undisputed facts that the plaintiff knew or should have known of the injury and that it was wrongfully caused the Court may as a matter of law rule that the statute of limitations is not tolled by the discovery rule. *Berry v. G.D. Searle & Co.*, 56 Ill.2d 548, 309 N.E.2d 550 (1974), *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill. Dec. 6, 421 N.E.2d 869 (1981). Thus, this Court must now decide whether UNR alleges facts in its amended complaint which, if taken as true and given every reasonable inference in the plaintiff's favor, indicate that until July 29, 1977 UNR neither knew nor should have known of its injury and that it was wrongfully caused. There are no such allegations in the amended complaint. Therefore, the discovery rule is inapplicable.

Accordingly, American Mutual's motion to dismiss Counts III through IX of the

First Amended Complaint as barred by the statute of limitations should be granted.

E. *The Existence of Breaches of Fiduciary Duties Alleged in Counts III and IV are Questions for the Trier of Fact.*

Apart from the limitations bar, American Mutual argues that UNR has not alleged facts sufficient to state a claim for breach of fiduciary duty. The Court finds that UNR's First Amended Complaint adequately states claims for breaches of fiduciary duty.

To withstand a motion to dismiss, UNR must allege facts which, if taken as true and given all reasonable inferences in UNR's favor, would establish the following: 1) the existence of a fiduciary relationship, 2) a breach of the responsibilities reposed in that relationship and 3) that UNR was injured as a result of the breach. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). The allegations must be more than conclusory statements. *Ambrosino v. Rodman & Renshaw, Inc.*, 635 F.Supp. 968, 973 (N.D.Ill.1986). UNR must plead specific facts.

The term "fiduciary relationship" encompasses a broad range of associations bearing the common elements of trust and confidence reposed by one person in another and the resulting dominance and influence over the subservient party. *See, Carey Electric Contracting Inc. v. First Nat'l Bank of Elgin*, 74 Ill.App.3d 233, 30 Ill. Dec. 104, 108, 392 N.E.2d 759, 763 (1979). The fiduciary relationship and the accompanying duties may exist as a matter of law due to the parties association, such as attorney-client or principal-agent. The relationship may also exist due to special facts

and circumstances showing the elements of trust and confidence and the resulting dominance and influence. *Carey*, 74 Ill.App.3d at 238, 30 Ill.Dec. at 108, 392 N.E.2d at 763.

UNR relies on both theories to establish the fiduciary relationship. UNR contends that the insurer/insured relationship was a fiduciary relationship as a matter of law. In addition, UNR asserts that American Mutual's status as a direct writer of insurance policies for UNR establishes a fiduciary relationship, similar to that between a broker and an insured. Finally, UNR submits that fiduciary duties arise from the special facts and circumstances surrounding the relationship with American Mutual. UNR contends that the duties accompanying the alleged fiduciary relationship were breached by American Mutual's failure to recommend that UNR take steps to prevent unsafe use of its asbestos products (Count III) and by American Mutual's failure to recommend adequate insurance coverage (Count IV).

UNR's first argument fails. Neither Illinois law nor North Carolina law supports the contention that an insurer owes a fiduciary duty to its insured.[9] In fact, UNR cites no Illinois or North Carolina authorities for the proposition, but relies on Pennsylvania and California decisions.[10]

■ The general rule in this jurisdiction is that no fiduciary relationship exists between an insurer and the insured as a matter of law. *Robacki v. Allstate Insurance Co.*, 127 Ill.App.3d 294, 296, 82 Ill. Dec. 471, 473, 468 N.E.2d 1251, 1253 (1984). The extent of an insurer's duties to the insured are limited to those defined by the insurance contract. *Id.* Accordingly, the mere allegation of an insurer/insured rela-

---

**9.** Since the insurance contracts between UNR and American Mutual were presumably entered in North Carolina (although the complaint is not specific) North Carolina law may be applicable. Restatement (2d) Conflict of Laws § 145 (1971).

**10.** Moreover, the decisions relied upon by UNR fail to support the proposition that an insurer/insured relationship imposes fiduciary duties as a matter of law. *Gedeon v. State Farm Mutual Insurance Company*, 342 F.2d 15 (3rd

Cir.1965) defines the duties of the insurer arising only from the insurance contract. *Gedeon* expresses no opinion as to extra-contractual duties of the insurer to the insured. *Egan v. Mutual of Omaha Insurance Company*, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979) likens the responsibility of an insurer to that of a fiduciary in the context of punitive damage awards. However, the *Egan* court never expressly imposes a noncontractual fiduciary duty on the insurer.

tionship does not support UNR's claim of a fiduciary relationship.

 Nor does American Mutual's status as a direct writer of insurance effectively imposes the duties of an insurance broker upon American Mutual as a matter of law. It is true that an insurance broker is held to the duties of a fiduciary. *Black v. Illinois Fair Plan Association* 87 Ill. App.3d 1106, 42 Ill.Dec. 934, 409 N.E.2d 549 (1980). Yet, the duties imposed on an insurance broker reflect the broker's status as an agent of the insured. *Black,* 87 Ill.App.3d at 1108, 42 Ill.Dec. at 937, 409 N.E.2d at 552. An insurance broker holds no fixed or permanent relationship to any principal. Instead, the broker holds herself out for employment by any potential insured who then becomes the broker's principal. *City of Chicago v. Barnett,* 404 Ill. 136, 142, 88 N.E.2d 477, 481 (1949). The broker's duties are owed to the insured precisely because the broker has no standing relationship with the insurer. If the duties were owed to a specific insurer, the term "insurance agent" would more accurately describe the relationship. *See, Browder v. Hanley Dawson,* 62 Ill.App.3d 623, 629, 20 Ill.Dec. 138, 143, 379 N.E.2d 1206, 1211 (1978). American Mutual represented its own interests; it was a principal, not UNR's agent. It therefore did not assume the fiduciary duties of a broker by selling insurance to UNR.[11]

 Finally, and successfully, UNR contends that the special facts and circumstances surrounding the relationship with American Mutual give rise to the alleged fiduciary duties. It is well-settled in Illinois that a fiduciary relationship may be found to exist on the facts of a particular situation. *Farmers City State Bank v. Guingrich,* 139 Ill.App.3d 416, 94 Ill.Dec. 1, 487 N.E.2d 758 (1985), *Carey,* 74 Ill.App.3d at 238, 30 Ill.Dec. at 108, 392 N.E.2d at 763. The allegations must show that the beneficiary placed trust and confidence in the

fiduciary and there was resulting superiority and influence over the beneficiary. *Guingrich,* 139 Ill.App.3d at 424, 94 Ill.Dec. at 12, 487 N.E.2d at 769.

UNR alleges the following facts to establish the existence of a fiduciary relationship: 1) American Mutual was a direct writer of insurance policies for UNR; 2) American Mutual held itself out as an expert on insurance coverage for asbestos manufacturers; 3) UNR relied on the expertise and superior knowledge of American Mutual; 4) American Mutual conducted inspections and gave its recommendations as to the safety of UNR's products; 5) American Mutual analyzed the hazards and unsafe practices to which UNR was exposed; and 6) UNR's relationship with American Mutual spanned thirty years.

American Mutual points out that in *Seaboard Seed Company v. Bemas Company, Inc.,* 632 F.Supp. 1133, 1136 (N.D.Ill.1986), the court held that merely showing a slightly dominant business position and that one party relied on the other party's business expertise would not be enough to establish a fiduciary relationship. But the court in *Seaboard Seed* nevertheless refused to hold as a matter of law that the defendant owed no duty to the plaintiff, although the court was unconcerned with the label attached to any such duty.

Here, UNR alleges more than did the plaintiff in *Seaboard Seed.* The allegations and the reasonable inferences that may be drawn from them suggest that American Mutual occupied a dual capacity in its relationship with UNR. Its first capacity was as an insurer dealing at arm's length with its insured, and no fiduciary duty can arise from that. In its other capacity, however, American Mutual may have been an adviser or consultant on which UNR relied. The second capacity may give rise to the duties of a fiduciary, at least to the extent of an obligation to

---

11. UNR relies extensively on *Yanquell v. United Services Auto Association,* 193 Cal.App.3d 1265, 238 Cal.Rptr. 870 (1987) for the proposition that a direct writer of insurance assumes the fiduciary duties of an insurance broker. Aside from the fact that the California law is not applicable,

*Yanquell* more correctly reflects the proposition that under certain circumstances not present in the case at bar, a direct writer *may* be held to a standard higher than that to which an insurer is normally held.

disclose known facts and an obligation of care. Counts III and IV sufficiently allege claims for breach of fiduciary duties.

### F. *American Mutual Breached No Duty of Good Faith and Fair Dealing to UNR as alleged in Counts V, VI and VII.*

UNR alleges in Counts V, VI and VII that American Mutual breached the duty of good faith and fair dealing that it owed to UNR. The duty was allegedly breached by American Mutual's failure to recommend that measures be taken to prevent asbestos–related injuries (Count V), by American Mutual's failure to recommend adequate insurance coverage (Count VI) and by American Mutual's failure to provide full and fair disclosure as to UNR's insurance coverage (Count VII).

Both Illinois and North Carolina courts recognize that an insurer owes its insured an implied in law duty of good faith and fair dealing. *Roberts v. Western–Southern Life Insurance Company*, 568 F.Supp. 536, 552 (N.D.Ill.1983), *State Automobile Insurance Company of Columbus, Ohio v. York*, 104 F.2d 730, 734 (4th Cir.1939) (applying North Carolina law). UNR and American Mutual agree that such a duty exists, but they disagree as to its scope. American Mutual claims that the duty is applicable only to the extent of a contract's terms and obligations. UNR claims that the duty extends beyond the terms of the contract and is applicable to the extra-contractual relationship of an insurer and its insured. In the alternative, UNR claims that the duty is extended beyond the terms of the contract by the existence of facts indicating a special relationship between the insurer and the insured.

In the context of an insurer/insured relationship, the duty of good faith and fair dealing requires both parties to treat the other party fairly and to give at least as much consideration to the other party's welfare as it gives to its own interests. *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.*, 29 Ill.App.3d 339, 347, 330 N.E.2d 540, 548 (1975), *Roberts* 568 F.Supp. at 522. Yet, this explanation of the duty is useless without a definition of its scope.

Illinois requires that parties to a contract deal fairly and honestly with each other when performing the terms and obligations of the contract. *Gordon v. Matthew Bender & Co., Inc.*, 562 F.Supp. 1286, 1289 (N.D.Ill.1983) (defining the duties relating to an employment contract). In the context of an insurer/insured relationship, the same principle applies. All Illinois' cases cited by UNR are in accord. In *Ledingham*, 29 Ill.App.3d at 347, 330 N.E.2d at 545, the tort cause of action was based on an alleged bad faith refusal of a health insurer to pay the insured's claim. The terms of the contract specified that the insurer would pay certain health care costs of the insured. The insurer refused to pay when the insured made a claim under the contract. It is true that the court in *Ledingham* recognized implied duties, the breach of which were actionable in tort, but the duties related specifically to the insurance policies. "The insurer owes to its insured an implied in law duty of good faith and fair dealing that it will do nothing to deprive the insured of the *benefits of the policy.*" *Ledingham*, 29 Ill.App.3d at 347, 330 N.E.2d at 546 (emphasis added). *See also, Roberts*, 568 F.Supp. at 536 (alleged bad faith by insurer in handling a claim under an insurance policy).

Similarly, North Carolina courts recognize that an insurer must act with good faith when dealing with an insured's claim under the insurance policy. *York*, 104 F.2d at 734. UNR cites no North Carolina cases for the proposition that the implied duties extend to the extra-contractual relationship of the contracting parties.[12] This Court, therefore, agrees with

---

**12.** UNR attempts to expand Illinois and North Carolina law by citing Arizona, Michigan and Arkansas cases to support their arguments. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986), *Stein, Hinkle, Dawe and Assoc., v.* *Continental Casualty Company*, 110 Mich.App. 410, 313 N.W.2d 299 (1981), *Stokes v. Harrell*, 289 Ark. 179, 711 S.W.2d 755 (1986). All three cases do in fact discuss extension of the implied duty of good faith and fair dealing beyond the

the defendant that the scope of implied duties of good faith and fair dealings is limited to the performance of the contract's terms and obligations. Only if UNR had alleged bad faith in American Mutual's performance of the terms and obligations of their insurance contracts would a claim for bad faith have been stated.

UNR makes no such allegation. Counts V, VI and VII therefore fail to state claims for breaches of duties of good faith and fair dealing.

### G. *Count VIII States A Claim Upon Which Relief May be Granted.*

In Count VIII, UNR alleges that American Mutual inspected UNR facilities in North Carolina and issued reports that "in effect told UNR that the manufacture of asbestos products in the manner and which UNR did at those facilities was safe and acceptable and did not result in health hazards to its workers and others." Amended Complaint ¶ 107. UNR seeks damages resulting from American Mutual's alleged negligent misrepresentations.

Since the inspected facilities were in North Carolina and it appears (although it is not certain from the complaint) that the allegedly defective reports were received in North Carolina, North Carolina law is applicable. Restatement (2d) of Conflicts of Laws § 145 (1971).

North Carolina affords relief for negligent misrepresentations. *Howell v. Fisher*, 49 N.C.App. 488, 272 S.E.2d 19 (1980); *Davidson & Jones v. County of New Hanover*, 41 N.C.App. 661, 255 S.E.2d 580 (1979). In so doing, North Carolina courts follow the Restatement Second of Torts,

§ 552 (1977), which provides in part as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See Howell*, 49 N.C.App. at 494, 272 S.E.2d at 25; *Davidson & Jones*, 41 N.C.App. at 666, 255 S.E.2d at 585 (referring to earlier, but similar, version of the Restatement, "We believe that the Restatement of Torts, § 552 is in accord with the law of North Carolina.")

American Mutual argues that the first element of a claim for negligent misrepresentation is that the defendant was in the business of supplying information. That certainly is the law in Illinois. *See, e.g., Black, Jackson & Simmons v. Intern. Bus. Mach.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1st Dist. 1982) (sellers of computer equipment not liable for negligent misrepresentation about that equipment because they were not in the business of supplying information). That, however, is not the law in North Carolina. In *Stanford v. Owens*, 76 N.C.App. 284, 286, 332 S.E.2d 730, 732 (N.C.App.1985), the Court held a seller of land liable to the buyer for the negligent misrepresentation of the condition of the

---

performance of the contract's express terms. In *Stokes* and *Stein* the plaintiffs thought they were covered for risks for which they were not. Their misconception was derived from the fact that they had asked the insurance agents to procure certain coverage or they had assumed that the coverage had been procured. The *Stokes* and *Stein* Courts stated that a "special relationship", indicated by the length of the business relationship and degree of dependency, may extend the implied duties. The Court in *Rawlings* discussed the implied duties in relation to the imposition of punitive damages. This Court is not persuaded by these three cases to extend the implied duties of good faith and fair

dealing beyond the contractual terms for two reasons. First, the facts of the case at bar are easily distinguishable. UNR never alleges that it requested products liability insurance from American Mutual. American Mutual never indicated, expressly or impliedly, that it would procure products liability coverage. Also, UNR does not pray for punitive damages due to American Mutual's intentional refusal to pay a claim. Second, the same facts which UNR alleges to show a "special relationship" are alleged to show a fiduciary relationship in Counts III & IV. UNR's attempt to extend the implied duties beyond the terms of the contract is merely a reassertion of the fiduciary relationship counts.

land. The seller was not in the business of supplying information.

Here, UNR has alleged that American Mutual conducted its inspections and issued its reports pursuant to insurance policies it sold to UNR, and that, "American Mutual widely advertised its occupational safety and health inspection audit and advisory capabilities in marketing its insurance to UNR and others." Amended Complaint ¶ 104. Under North Carolina law, these allegations are sufficient to satisfy the first requirement of an action for negligent misrepresentation: American Mutual supplied the information in the course of its business.

UNR has also successfully alleged the second element of a claim for negligent misrepresentation under North Carolina law. Restatement § 552 requires that the false information be provided "for the guidance of others in their business transactions". Many courts have construed that language to limit liability to instances in which the defendant provided information to the plaintiff for guidance in transactions with third parties. *See, e.g. National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 150 (N.D.Ill.1981) (the tort of negligent misrepresentation "has been recognized almost exclusively in situations where information was supplied that damaged the plaintiff in its relations with *third parties*"). But in *Stanford,* the North Carolina Court held a land seller liable to the buyer, although the false information was not supplied to guide the buyer in a transaction with another party.

American Mutual further argues that UNR does not allege that the allegedly false information was provided for guidance in "transactions," but in UNR's manufacture of its own products. The word "transaction" is usually used in connection with "an act or agreement or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." *Black's Law Dictionary* 1341 (5th ed. 1979). The Comments and Illustrations to Restatement § 552 all

deal with such things as sales, loans or investments, rather than the manufacture of goods.

Nevertheless, it again appears that *Stanford* undercuts American Mutual's position. In *Stanford,* the land sellers gave the buyers incorrect information indicating that the buyer could safely build a restaurant on the property. The buyers then "completed the transaction and erected their restaurant building." 76 N.C.App. at 286, 332 S.E.2d at 732. The Court, however, did not hold that the sellers supplied the misinformation to guide the buyers in their decision to buy the property, or that the buyers relied on the false data in completing the transaction. Rather, the Court held that the evidence was sufficient to support a jury finding that,

> In the course of their real estate developing and selling business defendant's undertook to supply plaintiff's with *information for their guidance in building on the property acquired;* in doing so they neglected to include information that tended to show that the land was not suitable for plaintiffs' building; and plaintiff's justifiably relied thereon and suffered harm and damage thereby.

*Stanford,* 76 N.C.App. at 286, 332 S.E.2d at 732. (Emphasis added). In a later section of the opinion, the Court indicated that the issue was "[w]hether in erecting their building" the buyers reasonably relied on the misrepresentation. 332 S.E.2d at 733. Nowhere does the Court indicate that the buyers' reliance in buying the land was even an issue. There is no meaningful distinction between the construction of a building and the manufacture of products. UNR has successfully alleged that American Mutual supplied false information for the guidance of UNR in its "business transactions," as that term is construed in North Carolina.

Finally, American Mutual argues that UNR has failed to allege that American Mutual made any false representation. Although UNR's pleading may be imprecise, it sufficiently alleges that American Mutual said that UNR's manufacture of asbestos products "was safe and acceptable and

did not result in health hazards to its workers and others." Amended Complaint ¶ 107. While the way in which that allegation is phrased ("in effect") suggests that American Mutual may argue that it made no such representation, that is an issue of fact. Under the rules of liberal pleading construction, the fact is sufficiently alleged.

Apart from the statute of limitations bar, UNR has stated a claim upon which relief may be granted for negligent misrepresentation in Count VIII of its Amended Complaint.

### H. *Count IX Fails to State a Claim for Which Relief may be Granted.*

The final issue is the sufficiency of UNR's claim for "negligent inspection" of the Bath and Ingalls shipbuilding facilities. UNR's First Amended Complaint fails to state a claim for "negligent inspection."

The tort of "negligent inspection" is generally governed by § 324A of the Restatement (2nd) of Torts. The defendant must have (1) undertaken to perform a task, (2) which the defendant should have recognized as necessary to protect a third party (the plaintiff) and (3) injury was suffered by the third party due to (4) the defendant's failure to exercise reasonable care when performing the task. Furthermore, liability will attach only if one of the following additional requirements is met: (a) the defendant's failure to exercise reasonable care increased the risk of harm to the plaintiff or (b) the defendant had undertaken to perform a duty owed to the third party by another or (c) the third party suffered the injury because he relied on the defendant's competent performance of the task.

The Court need not conduct a detailed analysis of all negligent inspection elements. The parties own citation of authority shows that the "negligent inspection" claim may be analyzed by using the traditional tort elements of duty, breach, and proximately cause injury. *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 75, 199 N.E.2d 769, 774 (1964).

American Mutual argues that the duties assumed by an insurance carrier which undertakes to perform inspection services are owed only to persons covered by the insurance policies pursuant to which the inspections were conducted. *See Armstrong v. Aetna Insurance Company*, 448 So.2d 353 (Ala.1984). The Court disagrees. The proper consideration is whether the injury was the reasonably probable and foreseeable consequence of the defendant's acts and whether the defendant could have reasonably foreseen that the plaintiff would be endangered by the negligent performance.

The general rule as to the existence of a duty in negligent inspection cases has been expressed in terms of foreseeability. The duty to exercise ordinary care "does not depend upon contract, privity of interest, or the proximity of relationship but extends to remote and unknown persons ... [and] extends ... to such persons as defendant could reasonably have foreseen would be endangered as the result of negligent performance." *Nelson*, 31 Ill.2d at 80, 199 N.E.2d at 779. It is also well settled that no legal duty exists unless the plaintiff's injuries are the reasonably foreseeable result of the defendant's action. *Intamin, Inc. v. Figley Wright Contractors*, 608 F.Supp. 408 (N.D.Ill.1985).

UNR alleges that American Mutual conducted safety inspections at Ingalls and Bath pursuant to insurance contracts between the shipbuilders and American Mutual. UNR further alleges that it was an intended beneficiary for the inspections due to its special relationship with American Mutual and therefore the duty to use reasonable care in performing the inspections was owed to UNR. A special relationship is alleged to exist due to the advise given by American Mutual to UNR on asbestos related insurance coverage, the superior knowledge of American Mutual concerning such matters, the indices of expertise that American Mutual represented to UNR and UNR's reliance on the alleged expertise. These are the same facts on which UNR relies to establish a fiduciary relationship between American Mutual and itself.

It seems to be UNR's contention that the duty of care in an action for "negligent inspection" is owed to the beneficiary of a fiduciary relationship who was otherwise not a party to the insurance contracts mandating the inspections. The Court finds that such a party is not a foreseeable plaintiff and the duty of care is not owed to UNR.

The authorities cited by UNR and American Mutual deal only with persons who were physically or economically harmed as a direct result of the inspectors misfeasance. *Van Winkle v. American Steam Boiler Insurance Company*, 52 N.J.L. 240, 19 A. 472 (1890) (inspector held liable to plaintiff whose adjacent property was damaged by an explosion of a boiler which had been inspected by the defendant), *Nelson*, 31 Ill.2d 69, 199 N.E.2d 769 (1964) (inspector liable to employees of general contractor who were injured in collapse of a hoist which had been inspected by the defendant). UNR's injury is the monies paid to claimants who contracted asbestosis at Ingalls and Bath. UNR's injury is derivative, not direct and is therefore distinguishable from every judgment rendered against a negligent inspector of which this Court is aware.

Based upon UNR's allegations, UNR's relationship to American Mutual falls under one of two categories. UNR and American Mutual are either joint tort-feasors or they are beneficiary and fiduciary. In the former case, the proper remedy for UNR would be indemnification or contribution. In the latter case, the proper remedy would be damages for breach of fiduciary duty. There is no authority for imposition of a legal duty in a negligence action based on the facts alleged in this case. Therefore, American Mutual's motion to dismiss

Count IX for failure to state a claim should be granted.

## CONCLUSION

The District Court should enter an Order dismissing this adversary proceeding.

## MEMORANDUM OPINION AND SUPPLEMENTAL REPORT AND RECOMMENDATION TO THE DISTRICT COURT

### Aug. 15, 1988

On March 11, 1988, this Court entered a Memorandum Opinion and Report and Recommendation to the District Court ("Report") recommending that UNR's nine count complaint be dismissed. UNR has now filed Motions to Reconsider and for Clarification of the Report and a related Motion to File an Amended Complaint.[1] Those motions are denied.

### *Motion to Reconsider and for Clarification*

In the Report, this Court held that Counts I and II of UNR's First Amended Complaint (which seek indemnification from American Mutual for asbestos claims against UNR) should be dismissed for lack of subject matter jurisdiction because they fail to state justiciable controversies, except to the extent that Count I alleges that UNR had settled three claims for asbestos-related injuries by workers at the Ingalls Shipbuilding facility in Mississippi. With respect to those three claims, however, this Court held that Count I fails to state a claim upon which relief could be granted both because the exclusive remedy provisions of the applicable worker's compensation acts bar UNR's claim for indemnification and because under Mississippi law UNR is an active tortfeasor not entitled to indemnification from a joint tortfeasor.

---

1. Although the Report is not a judgment for purposes of F.R.Civ.Pro. 59(e) (made applicable to bankruptcy matters by Bankruptcy Rule 9023), this Court has jurisdiction to reconsider its own prior decisions. *See, United States v. Colombo*, 616 F.Supp. 780, 783 (E.D.N.Y.1985), *rev'd on other grounds* 777 F.2d 96 (2nd Cir. 1986) ("A judicial officer, whether Magistrate or Judge has inherent power to reconsider his own order.") *See also, In re Meter Maid Industries,*

*Inc.*, 462 F.2d 436 (5th Cir.1972). Also, UNR was procedurally correct to file its Motion to File Amended Complaint shortly after its Motion for Reconsideration. *See, Scott v. Schmidt*, 773 F.2d 160, 163 (7th Cir.1985) (proper to "seek leave to amend by first filing a motion to alter, set aside or vacate the judgment pursuant to Rule 59(e) or Rule 60(b) and then requesting leave to amend pursuant to Rule 15(e)").

UNR seeks reconsideration and clarification of all these holdings.

Count I—Indemnification for the Three Settled Claims

UNR's first argument is that this Court overlooked the Mississippi Supreme Court's decision in *Miller v. McRae's, Inc.,* 444 So.2d 368 (Miss.1984). UNR claims that Miller supports its view that the Mississippi worker's compensation statute does not preclude relief for injuries not covered by that statute. UNR goes on to argue that its injury is not compensable as a worker's compensation claim, and therefore the Mississippi exclusive remedy provision is inapplicable.

UNR is confusing the concepts of injury and exclusive remedy. *Miller* does not define the scope of the exclusive remedy provision of the Mississippi statutes. Rather, *Miller* only construes the statutory definition of "injury", holding that false imprisonment is not an injury compensable under the Mississippi worker's compensation act. Since false imprisonment is not covered by the act, the act's exclusive remedy provision had no application and did not bar the employee's tort claim.

Here, UNR alleges that the defendant American Mutual caused the injuries to the asbestos claimants with whom UNR reached settlements. UNR does not, in Count I, seek compensation for its own injury. Rather, UNR seeks to impose ultimate liability for the workers' injuries on American Mutual. In Mississippi, as elsewhere, indemnity is a remedy available to one joint tortfeasor "to shift his responsibility to another joint tortfeasor." *Home Insurance Co. of N.Y. v. Atlas Tank Mfg. Co.,* 230 So.2d 549, 551 (Miss.1970).

> Two critical prerequisites are generally necessary for the invocation of non-contractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the *injured person;* and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong.

Id. (emphasis added).

In this case, the injured persons are the asbestos claimants, not UNR. UNR has not alleged, and cannot allege, that the Ingalls workers who suffered asbestosis as a result of their employment are not covered under the Mississippi worker's compensation act. Therefore, UNR's argument based upon *Miller* is incorrect, because in *Miller* the injury to the employee, false imprisonment, was not covered under the Act.

UNR also notes that this Court did not mention two district court opinions holding that Mississippi's worker's compensation act did not preclude tort relief against compensation carriers. *Fuller v. Aetna Casualty & Surety Co.,* 369 F.Supp. 967 (S.D. Miss.1974) and *Stacy v. Aetna Casualty & Surety Co.,* 334 F.Supp. 1216 (N.D.Miss. 1971), reversed on other grounds 484 F.2d 289 (5th Cir.1973). This Court did not mention those two cases because they are of no further precedential value in light of the Mississippi Supreme Court's subsequent holding that compensation insurers are protected by the exclusive remedy provisions of the worker's compensation act. See, Report 18–19.

Next, UNR, relying upon *Hill v. United States Fidelity and Guarantee Co.,* 428 F.2d 112 (5th Cir.1970), *cert. denied,* 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed.2d 621 (1971) argues that tortious inspection by a compensation carrier is a tort independent of a carrier's contractual undertakings in providing compensation insurance. UNR is entirely correct. *Hill* does hold that hotel guests injured in a fire stated a claim upon which relief could be granted by alleging that the hotel's compensation carrier had negligently conducted periodic safety inspections. Indeed, this Court, recognized the existence of such a tort in the Report. See, Report 43–45.

The problem with UNR's argument is that it has nothing to do with Count I, which seeks indemnification. As noted above, indemnification is not a remedy for an injury, but a means of shifting responsibility for somebody else's injury. Therefore, the independent tort of negligent inspection is not a basis for indemnification,

but can only be a basis for compensation for damages suffered by the plaintiff as a result of that tort. Here, UNR did attempt to allege such a tort, but this Court held that it failed to do so because UNR was not within the scope of American Mutual's duty. See, Report 43–46. UNR has not challenged that holding in its motion for reconsideration, and *Hill,* which deals with persons who suffered physical injury in a hotel fire, certainly does not bring that holding into question.

Next, UNR argues that the issues of whether the exclusive remedy provisions of the worker's compensation laws bar this suit and whether UNR was an active tortfeasor are questions of fact for a jury to decide. *"Johnson [v. American Mutual Liability Insurance Co.,* 559 F.2d 382, 395 (5th Cir.1977)]* expressly acknowledges that insurer liability under Federal law depends on specific facts." Supplemental Memorandum of UNR 11.[2] Plaintiffs opposing motions to dismiss frequently argue that their claims depend upon the facts. Saying that a claim depends upon its facts is like saying a fish depends upon water—both statements are true, but they don't help to distinguish either the claim or the fish from others of its species. What claim does not depend upon its facts?

The issue raised by a motion to dismiss is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Here, the best that UNR could hope to prove under Count I is that American Mutual was Ingalls' worker's compensation carrier and caused the workers' injuries by negligently performing safety inspections at Ingalls, and that UNR has no liability to the injured workers except as the manufacturer of the asbestos products. That set of facts—the best UNR could hope for—does not state a claim for indemnification or

contribution for the reasons set forth in the Report.

But UNR argues that this Court ignored its specific allegation that "any fault on the part of UNR was at most passive in nature, while American Mutual's fault was active." Amended Complaint ¶ 33. This, too, is a familiar tactic of plaintiffs arguing against motions to dismiss. It is an unsuccessful tactic because,

> if the allegations of the Complaint, taken as true, do not effectively state a claim, the added assertion by plaintiff that they do state a claim will not save the Complaint. Basically, the Court will accept the pleader's description of what happened to him along with any conclusions that can reasonably be drawn therefrom. However, the Court will not accept conclusory allegations on the legal effect plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself.

5 Wright and Miller, Federal Practice and Procedure, § 1357, pp. 596–97 (1969). Here, UNR has alleged that it was only the manufacturer of the asbestos products. UNR also alleges that its fault was passive. But that legal conclusion is contradicted by its allegation of fact, because the law is that the manufacturer of harmful products is an active tortfeasor. See, Report 23.

UNR's last effort to save Count I is its argument that American Mutual's negligence was the superseding or intervening cause of the worker's injuries. The problem with that argument is that the superseding cause doctrine provides a defense, not a ground for indemnification. If the conduct of American Mutual really was the superseding cause of the underlying injuries, then UNR has no liability. If UNR has no liability, then it has no claim for indemnification, because legal liability to the injured party is a necessary element

---

**2.** The language actually used in *Johnson* (affirming a summary judgment) is somewhat less compelling than UNR's paraphrase. "While to some extent, whether or not the insurer is immune will depend on the facts in each case and

while it is possible to imagine situations where the insurer could be held liable as a third person, this is not such a case." 559 F.2d at 395. That is a tad short of a ringing mandate to deny all Rule 12(b) motions in such cases.

of indemnification. "[T]o the extent the indemnity allegations might be read to charge [the shipyards'] fault as an intervening or superceding cause in relation to any conduct of the manufacturers for which liability might be found, they have not invoked a right to indemnity but an absolute defense to the main claims." *White v. Johns–Manville Corp.*, 662 F.2d 243, 250 (4th Cir.1981). See also, *Home Insurance*, 230 So.2d at 551 (claimant to indemnification must be liable to injured person); *Bunge Corp. v. Agri–Trans Corp.*, 542 F.Supp. 961, 968 (N.D.Miss. 1982) ("the indemnitee [must] show some type of legal *liability* to the injured party.")[3]

Counts I and II—Justiciable Controversy.

UNR also attacks this Court's holding that Counts I and II fail to state justiciable controversies. First, UNR argues that *Bunge Corp.* recognizes a right of prospective indemnity based upon the pendency of lawsuits. Actually, *Bunge Corp.* does not recognize any such right, but merely assumes the existence of such a right for the sake of argument in the course of reaching the conclusion that, even if there were such a right, the plaintiffs would not be entitled to indemnification for other reasons. (See discussion of *Bunge Corp.*, above). *Bunge Corp.*, 542 F.Supp., at 968. Also, to the extent that *Bunge Corp.* can be read as containing *dicta* in support of UNR's prayer for prospective indemnity, that *dicta* is inconsistent with the law in this circuit and district. See, Report 10–11.

Next, UNR argues that it must propose a plan of reorganization that will discharge the asbestos claims, and therefore those claims will never be tried. Since those claims will never be tried, UNR argues, it will never have the opportunity to litigate its asserted right to indemnification from American Mutual. UNR concludes that this problem is sufficient to render the claims stated in Counts I and II justiciable.

This argument fails for at least two reasons. First, no matter how strong the Congressional policy in favor of corporate reorganization, the supreme law in this country is the Constitution, not the Bankruptcy Code. The Bankruptcy Code cannot empower this Court or the District Court to decide controversies that Article III excludes from federal jurisdiction.

Second, UNR need not try all the cases in order to ripen its claim for indemnification. At some point in the plan process, some decision will have to be made about which claims to pay. Once that decision is made, UNR may be able to argue that it has the equivalent of settlements under the reasonable apprehension of liability. But what UNR really wants, which is to establish American Mutual's liability before it proposes a plan so that it can use American Mutual's money to fund that plan, is not available to it at this time.[4]

For these reasons, this Court denies UNR's motion to reconsider its holdings with respect to Counts I and II, and trusts that the foregoing sufficiently clarifies those holdings.

*Motion for Leave to File Amended Complaint*

UNR's motion for leave to file an amended complaint must also be denied because it does not cure the fatal defects in the existing complaint. The only difference be-

---

**3.** *Bunge Corp.*, which is cited by UNR for a different purpose (see below), provides a good example of this principle. In *Bunge Corp.*, the plaintiff asserted a right to prospective indemnification against the defendant. Without holding that there is such a thing as prospective indemnification, the Court held that the plaintiffs would have no right to indemnification because they would have no liability to any persons who might be injured as a result of the conduct involved in that case. Similarly, here if American Mutual's conduct is the superseding cause of the underlying injuries, UNR has no liability and therefore no right to indemnification.

**4.** UNR's argument also strikes this Court as disingenuous. It raises this question: Does the phrase "test case" ring a bell? Indeed, because UNR settled three of the Mississippi asbestos claims, it has had a "test case". UNR may not like the result, but its claim to indemnification with respect to the Mississippi cases has been decided on its merits. If the result had been different, and American Mutual found liable, the precedential value of such a decision would have been significant in UNR's attempt to negotiate a plan.

tween the proposed second amended complaint and the first amended complaint is that UNR has alleged in nine proposed new paragraphs the basis of its assertion that, under the Illinois discovery rule, the claims it has alleged in Counts III, IV and VIII (for breach of fiduciary duties and negligent misrepresentation) are not barred by the statute of limitations.

In the proposed additional nine paragraphs, UNR alleges that the first asbestos-related lawsuit against UNR was filed in 1968. UNR personnel, insurance brokers and attorneys then attempted to locate potentially applicable insurance policies, but did not discover any evidence that American Mutual had issued policies to the named plaintiffs' predecessors until 1980. It was not until 1983, after the employment of insurance specialists, that UNR conclusively established that American Mutual had insured the predecessors from the 1930's until 1964.

In 1983, American Mutual denied liability for the asbestos claims and UNR filed a lawsuit against American Mutual and other former insurers, seeking to establish coverage. Discovery in that lawsuit beginning in 1984 developed other evidence, including that American Mutual had acquired extensive knowledge and expertise concerning asbestos problems. UNR also learned in 1984 that American Mutual had insured and been the safety consultant for the Bath and Ingalls shipyards.

Finally, UNR alleges that, "At no time prior to July 29, 1977, was UNR aware of the facts and circumstances upon which its allegations are based in this Second Amended Complaint, including specifically the allegations contained in Counts III, IV and VIII herein. UNR did not discover, despite its diligence, nor did UNR have reason to know, despite its diligence, that it's injuries had been wrongfully caused by American Mutual (as alleged in Counts III, IV and VIII herein) or the facts upon which the allegations of Counts III, IV and VIII are based until after July 29, 1977." Proposed Second Amended Complaint, ¶ 24.

Counts III and IV allege that American Mutual breached fiduciary obligations by failing to recommend adequate safety measures and adequate insurance coverage to the predecessor entities. The injury UNR alleges is the incurring of costs and damages paid to asbestosis claimants. In Count VIII, UNR alleges that American Mutual negligently misrepresented the safety of conditions at the predecessor's facilities in North Carolina. Again, the damage alleged consists of the payments of settlements, judgments and costs in the asbestos cases.

Illinois Courts have created a rule, commonly known as the "discovery rule", that postpones the starting of the period of limitations until "a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415, 58 Ill.Dec. 725, 729, 430 N.E.2d 976, 980 (1981). Here, since the injury alleged by UNR includes its incurring of costs in defense of the asbestos claims and its exposure to liability on those claims, UNR knew of its injury no later than 1968 when it was first sued. The real question here is whether UNR knew or reasonably should have known that its injury was wrongfully caused.

In *Knox College*, the Illinois Supreme Court elaborated upon that component of the discovery rule. The Court said that "the term 'wrongfully caused' does not mean that the plaintiff must have knowledge of the defendants negligent conduct before the statute is triggered." The Court, quoting a prior decision said that, "if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible of invasion of one's legally protected interests." *Knox College* 407 Ill.2d at 415, 58 Ill.Dec. at 729, 430 N.E.2d at 980, quoting *Nolan v. Johns–Mansville Asbestos*, 85 Ill.2d 161, 170–71, 52 Ill.Dec. 1, 5, 421 N.E.2d 864, 868 (1981). *Knox* therefore concluded that the statute of limitations begins to run under the discovery rule when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable

person on inquiry to determine whether actionable conduct is involved." *Knox College*, 88 Ill.2d at 416, 58 Ill.Dec. at 729–30, 430 N.E.2d at 980–81. Under *Knox College*, "knowledge of wrongful cause [is] knowledge that requires a potential plaintiff to investigate and ask whether he has a cause of action, that is, whether the defendant has committed an actionable wrong." *Pollock v. Hafner*, 108 Ill.App.3d 410, 414, 64 Ill.Dec. 156, 158, 439 N.E.2d 85, 87 (4th Dist.1982).

Here, this Court found in the Report 34–35 that UNR had successfully alleged a claim for breach of fiduciary duties (except for the statute of limitations bar) because it had alleged, among other things, that it (or, more precisely and more pertinent here, the named plaintiffs' predecessors) had relied on the expertise and superior knowledge of American Mutual, that American Mutual had made safety recommendations to the predecessors, and that their relationship with American Mutual spanned 30 years. On these allegations, the Court held that UNR might be able to prove a relationship of trust and confidence with American Mutual, such that some degree of fiduciary duty may have arisen.

In its allegations supporting its discovery rule argument, however, UNR contends that it took 12 years, from the first lawsuit in 1968 until 1980, to even discover the possibility of such a relationship of trust and confidence. Plainly, the named plaintiffs' predecessors had full knowledge of their relationship with American Mutual, and UNR does not deny it.

It is equally plain that the first asbestos lawsuit filed in 1968 triggered a duty on UNR's part to investigate its insurance coverage and the cause of its exposure. UNR does not deny this either, and even alleges that it *did* begin to investigate in 1968. Under *Knox College*, therefore, the statute of limitations began to run no later than 1968—seventeen years before UNR filed this lawsuit.

UNR's only answer to this appears to be that the discovery rule saves its claim because, although its predecessors had actual knowledge of their relationship with American Mutual as late as 1964, the named plaintiffs had lost any awareness of that relationship by 1968, and did not regain that awareness until 1980.

UNR does not suggest, however, that its status as a successor-in-interest gives it any special protection from the statute of limitations. Nor does it cite any authority for the proposition that the discovery rule applies to a successor who had less actual knowledge than its predecessor, and Illinois law is to the contrary.[5] Illinois has followed the United States Supreme Court in holding that a plaintiff, injured by the use of a drug, who should have known of her injury and its wrongful cause, but who deferred filing suit on the advice of her doctors, is not protected by the discovery rule.

> If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about [the] injury.

*Witherrell v. Weimer*, 85 Ill.2d 146, 157, 52 Ill.Dec. 6, 12, 421 N.E.2d 869, 875 (1981), quoting *United States v. Kubrick*, 444 U.S. 111, 124, 100 S.Ct. 352, 360, 62 L.Ed.2d 259, 270 (1979). UNR's position here is even less appealing. It did not depend upon the advice of a third-party expert, but merely failed to learn relevant facts known to its predecessor. Even if it were assumed that UNR is not itself chargeable with that knowledge (an assumption this Court does not make), the discovery rule would not protect it.

---

**5.** UNR's principal authority, *Commonwealth Edison Company v. Encompas, Inc.*, 158 Ill.App. 3d 852, 110 Ill.Dec. 811, 511 N.E.2d 988 (3d Dist.1987), does not solve its problem. That case does hold that the discovery rule is available to save a tort claim against an insurance broker, and this Court does not doubt that the rule would be applicable here, if UNR had facts that supported its application.

Since the proposed amended complaint, just like its predecessor, fails to allege facts justifying the application of the Illinois discovery rule, it would be futile to allow it to be filed. UNR's motion for leave to file the amended complaint will therefore be denied. For whatever use it may be to the District Court Judge, this opinion will be filed as a supplement to the Report.